J-A21009-19
J-A21010-19

2020 PA Super 132

| | | |
|---|---|---|
| TAGHREED M. ILEIWAT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOHANNAD A. LABADI | : | |
| | : | |
| Appellant | : | No. 59 EDA 2019 |

Appeal from the Order Entered December 20, 2018
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  8469 March Term 2015

| | | |
|---|---|---|
| TAGHREED M. ILEIWAT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOHANNAD A. LABADI | : | |
| | : | |
| Appellant | : | No. 266 EDA 2019 |

Appeal from the Order Entered December 20, 2018
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  D15038469, PASCES 110115190

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                                              **FILED JUNE 03, 2020**

This Court *sua sponte* consolidated the above-captioned appeals from the trial court's December 20, 2018 entry of a final order resolving the economic issues related to the Jordanian divorce decree that terminated the marriage of Taghreed M. Ileiwat ("Wife") and Mohannad A. Labadi ("Husband").  Husband contests the trial court's determination that it had subject matter jurisdiction to entertain these claims, while Wife challenges the

September 5, 2018 order that denied her exceptions to the master's calculation of alimony *pendente lite* ("APL"). We affirm the jurisdictional ruling, reverse the order denying Wife's APL exceptions, and remand for entry of an APL award consistent with this opinion.

Husband and Wife married in New Jersey in 1989. They have dual citizenship in Jordan and the United States. The parties and their three children lived in various places within the United States until 2003. That year, Husband's employment took the family to Saudi Arabia, where they continued to reside until 2014. Throughout this time, the parties periodically returned to Jordan, where they owned real property and where members of Wife's family resided. Husband obtained a contract through his Saudi Arabian employer to work on a ten-month project in Philadelphia. The family relocated there on July 30, 2014, purchasing a condominium in which to live. The parties' two adult children attended college in Philadelphia, and their minor child went to boarding school in Connecticut.[1]

In December 2014, the family traveled to Saudi Arabia to renew their visas for Husband's work. Husband and the children returned to Philadelphia at the beginning of January 2015, while Wife detoured to visit family in Jordan. During her stay in Jordan, Husband called her to give her notice of a unilateral divorce under Muslim law. Wife was subsequently served by a process server

---

[1] At no point has Wife been employed, and, for purposes of APL, the parties stipulated that she has no earning capacity. *See* Trial Court Opinion (59 EDA 2019), 3/18/19, at 4.

- 2 -

with written notice of revocable divorce, which became final and irrevocable after ninety days. No economic claims related to the dissolution of the parties' marriage were litigated or decided in Jordan.

Wife returned to the United States in March 2015 and filed a complaint in Pennsylvania for divorce, equitable distribution, and support. Husband was duly served with the complaint in Philadelphia. Husband filed preliminary objections challenging the subject matter jurisdiction of the court. By order of August 4, 2015, the court concluded that the objections were untimely, "but in the interest of judicial economy, since both parties testified that they consent to a divorce," the court decreed its recognition of the Jordanian divorce. Order, 8/4/15. The order further provided the court was retaining jurisdiction over Wife's ancillary economic claims pursuant to 23 Pa.C.S. § 3104 ("Bases of jurisdiction"). Husband persisted with his jurisdictional challenge through various motions and petitions, including an attempt to obtain an interlocutory appeal, but the ruling did not change.

Meanwhile, Wife's economic claims proceeded. After an initial hearing on APL and support, an interim APL order was entered requiring Husband to pay Wife $3,300 of his $13,200 monthly income.[2] *See* Order, 8/6/15, at unnumbered 1. Both parties filed exceptions; Wife's resulted in a remand to the master. *See* Order 10/22/15. A second interim APL order was based upon a finding that Husband's monthly income was $24,000, and required him

---

[2] We use approximate numbers for ease of discussion.

to pay Wife $8,100 per month, which reflected the guideline APL amount of $9,500 less the guideline support amount Wife owed Husband because Husband had custody of their minor child. **See** Order, 3/18/16, at unnumbered 1.

Husband again filed exceptions, as well as a petition to modify support due to a decrease in his income. The parties resolved the exceptions, but not Husband's modification request, by an agreed-upon order pursuant to which Husband was obligated to pay Wife $6,300 per month based upon income of $21,800. **See** Order, 10/13/16, at 1. Thereafter, Husband filed an amended petition to modify, which culminated in a third interim APL order. The master determined Husband to have monthly income in excess of $35,000, but required him to pay Wife only $5,500 because that amount was sufficient to meet her expenses. **See** Report of Master in Support, 5/4/18, at 3. Wife filed exceptions, which the court consolidated with a *de novo* trial on Husband's jurisdictional challenge.

After the trial, the court entered orders that confirmed its jurisdiction over the economic claims ancillary to the Jordanian divorce, denied Wife's support exceptions, and provided for alimony and the equitable distribution of the parties' marital property. Both parties timely appealed, and they and the trial court complied with Pa.R.A.P. 1925. This Court consolidated the appeals *sua sponte* and entertained oral argument on the parties' various claims of error, which are now ripe for our disposition.

Husband presents the following questions for our review:

1.     Did the trial court err as a matter of law in holding that both Husband and Wife were "bona fide residents" of Pennsylvania for six months immediately preceding the commencement of the action as required by 23 Pa.C.S. § 3104(b), when the court's recognition of the Jordanian divorce decree required it to conclude that Husband was domiciled in Jordan in February 2015 -- one month before this action was filed?

2.     Did the trial court err as a matter of law in concluding that it had subject matter jurisdiction under 23 Pa.C.S. § 3104(b) where, when Wife filed the divorce complaint on March 13, 2015, Wife was already divorced from Husband under Jordanian law, Wife was living in Jordan and visiting family in New Jersey, Wife only lived in Pennsylvania for less than five months in 2014, Wife did not live in Pennsylvania for six months immediately preceding the filing of the complaint on March 13, 2015, and Wife never took any actions consistent with an intent to change her domicile from Jordan to Pennsylvania?

3.     Did the trial court err as a matter of law in concluding that it had subject matter jurisdiction under 23 Pa. C.S. § 3104(b) where Husband moved to Pennsylvania in 2014 solely to fulfill a ten-month assignment for his employer in Saudi Arabia, Wife failed to prove by clear and convincing evidence that Husband ever intended to change his domicile from Jordan to Pennsylvania, Husband did not remain in Pennsylvania at the end of the work assignment, and Husband has not lived in Pennsylvania since 2015?

Husband's brief at 6-7.

We address Husband's issues before considering those raised by Wife, which concern the APL award, for if the trial court lacked subject matter jurisdiction, all of the orders in question are nullities. *See*, *e.g.*, *In re Estate of Huber*, 197 A.3d 288, 292 (Pa.Super. 2018) ("Jurisdiction . . . is the right to adjudicate concerning the subject matter in a given case. Without such

- 5 -

jurisdiction, there is no authority to give judgment and one so entered is without force or effect." (internal quotation marks omitted)). "[W]here the issue for review centers on the question of subject matter jurisdiction, this question is purely one of law, our standard of review is *de novo*, and our scope of review is plenary." **B.J.D. v. D.L.C.**, 19 A.3d 1081, 1082 (Pa.Super. 2011) (cleaned up).

Husband's attacks upon the trial court's jurisdiction to entertain Wife's complaint are based upon his belief that the court's jurisdiction is limited by 23 Pa.C.S. § 3104(b). **See** Husband's brief at 6-7. Specifically, Husband contends that the record does not support a finding that either he or Wife had been domiciled in Pennsylvania for the six months immediately preceding the filing of Wife's complaint, and that the domicile of one of the parties was essential for jurisdiction to attach. **Id**. at 27-29.

Section 3104 states not one basis, but several bases, for a trial court to exercise jurisdiction over domestic relations matters. In pertinent part, the statute provides as follows:

**§ 3104. Bases of jurisdiction**

**(a) Jurisdiction.--**The courts shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and shall determine, in conjunction with any decree granting a divorce or annulment, the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:

(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial or separation agreement and

> including the partition of property held as tenants by the entireties or otherwise and any accounting between them, and the order of any spousal support, alimony, alimony *pendente lite*, counsel fees or costs authorized by law.
>
> . . . .
>
> **(b) Residence and domicile of parties.--**No spouse is entitled to commence an action for divorce or annulment under this part unless at least one of the parties has been a bona fide resident in this Commonwealth for at least six months immediately previous to the commencement of the action. Both parties shall be competent witnesses to prove their respective residence, and proof of actual residence within this Commonwealth for six months shall create a presumption of domicile within this Commonwealth.
>
> . . . .
>
> **(d) Foreign forum.--**After the dissolution or annulment of a marriage in a foreign forum where a matter under subsection (a) has not been decided, a court of this Commonwealth shall have jurisdiction to determine a matter under subsection (a) to the fullest extent allowed under the Constitution of the United States.

23 Pa.C.S. § 3104. The term "bona fide resident" means one who is domiciled in Pennsylvania, *i.e.*, one who has established "actual residence coupled with the intention to remain there permanently or indefinitely." **Sinha v. Sinha**, 834 A.2d 600, 603 (Pa.Super. 2003) (internal quotation marks omitted).

A close examination of the statute reveals that § 3104(b) requires domicile of at least one of the spouses in Pennsylvania to grant a Pennsylvania court subject matter jurisdiction **to terminate a marriage**. However, § 3104(d) provides a different basis for a court to exercise jurisdiction over claims related to a marriage that was dissolved by a court outside of

Pennsylvania—one limited only by the strictures of the federal constitution regarding the exercise of personal jurisdiction.[3]

This difference reflects the distinct rights at issue in the two actions and the forum state's interests therein. As one treatise aptly explains:

> Jurisdiction to permit the entry of a decree dissolving a marriage is founded upon the domicile of either of the parties and is quasi *in rem* jurisdiction. Jurisdiction to enter an order affecting title to property is based on the presence of that property or *res* in the jurisdiction of the court entering the order and is *in rem* jurisdiction. Title to property beyond the jurisdiction of the court and over which it therefore does not have *in rem* jurisdiction may be affected by ordering a party over whom the court has *in personam* jurisdiction to perform some act, such as a conveyance of the property. Jurisdiction to bind a defendant personally as in an order or judgment for support or alimony must be *in personam*.
>
> . . . .
>
> Because different tests must be met to establish jurisdiction to terminate the marriage, a *quasi in rem* proceeding, and the economic claims that may be brought ancillary to a divorce proceeding, all of which require *in personam* jurisdiction, the concept of "divisible divorce" arose. A court has jurisdiction to enter a divorce decree when either of the parties is a domiciliary of the forum state. The domicile of only one of the parties gives the court jurisdiction over the marriage. An *ex parte* divorce decree may therefore be entitled to full faith and credit even where the forum state does not have personal jurisdiction over the defendant. That same court is without jurisdiction to enter

---

[3] ***Compare*** 23 Pa.C.S. § 3104(d) ("After the dissolution or annulment of a marriage in a foreign forum . . . a court of this Commonwealth shall have jurisdiction to determine [undecided ancillary matters] **to the fullest extent allowed under the Constitution of the United States**." (emphasis added)), ***with*** 42 Pa.C.S. § 5322(b) ("[T]he jurisdiction of the tribunals of this Commonwealth shall extend to all persons [who, *inter alia*, are not domiciled in, served with process in, or consented to personal jurisdiction in Pennsylvania] **to the fullest extent allowed under the Constitution of the United States**[.]" (emphasis added)).

orders regarding incidents of the marriage, such as alimony and equitable distribution, that require personal jurisdiction over the defendant.

17 West's Pa. Prac., Family Law §§ 19:2-19:3 (Joanne Ross Wilder, et al., eds., 8th ed.) (footnotes omitted).

Applying the foregoing reasoning to the case *sub judice*, it is clear that once the parties agreed that the Jordanian divorce decree was valid and to be recognized by the Pennsylvania court,[4] there was no longer a pending request for the Pennsylvania court to terminate a marriage, and the domicile requirement of § 3104(b) was no longer applicable. Instead, under § 3104(d), the Pennsylvania trial court had jurisdiction to determine ancillary claims not decided by the Jordanian court, including property rights and support, so long as Husband's federal constitutional rights were not thereby infringed upon. ***Accord Stambaugh v. Stambaugh***, 329 A.2d 483, 489 (Pa. 1974) (holding Florida divorce decree was entitled to be recognized by Pennsylvania court because the husband, who maintained contacts with Pennsylvania, was nonetheless domiciled in Florida, but affirming Pennsylvania trial court's award of APL).

_____

[4] The principles of comity, rather than full faith and credit, govern recognition of an international judgment. ***See*** 17 West's Pa. Prac., Family Law § 19:1 (Joanne Ross Wilder, et al., eds., 8th ed.) ("The Full Faith and Credit Clause of the United States Constitution requires recognition of judgments and decrees of sister states. . . . Orders or decrees of foreign countries are not entitled to full faith and credit but may be recognized in accordance with principles of comity." (footnotes omitted)). Since the parties agreed that the Jordanian divorce was validly entered, we need not conduct a comity analysis.

Husband does not dispute that he was subject to personal jurisdiction in Pennsylvania, where he: (1) had obtained a driver's license, (2) acquired property acquired during the marriage that was subject to equitable distribution, and, most importantly, (3) was living at the time he was served with Wife's complaint. *See* 42 Pa.C.S. § 5301(a)(1)(i) (providing that a Pennsylvania court has personal jurisdiction over individuals who are present in the Commonwealth when process is served). Rather, all of Husband's arguments are based upon an absence of § 3104(b) strictures regarding domicile, which, for the reasons discussed above, have no bearing on Pennsylvania's subject matter jurisdiction over claims ancillary to a marriage that has been terminated in a foreign forum. Therefore, even if Husband is correct that the record does not support a finding that one of the parties was domiciled in Pennsylvania, Husband has failed to present any argument that warrants this Court's reversal of the trial court's determination that it had jurisdiction to adjudicate Wife's claims for equitable distribution and support. Thus, Husband's jurisdictional challenge is unavailing.

We now turn to the issues raised in Wife's appeal:

1.    Did the trial court commit an error of law and/or abuse its discretion in (a) granting Husband's petition to reduce [APL] and (b) deviating from guideline APL in a standard-income case based on an impermissible basis for downward deviation—that Wife's basic needs can be met with less than guideline support?

2.    Did the trial court commit an error of law and/or abuse its discretion in deviating downward from guideline APL without establishment of, and specification of, any special needs and/or

circumstances that would have made it unjust or inappropriate to reject Husband's petition to reduce, and to order support as presumptively calculated under the guidelines?

Wife's brief at 17 (footnote omitted).

We begin with the applicable law. "Our standard of review for awards of [APL] is: If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court." **Strauss v. Strauss**, 27 A.3d 233, 236 (Pa.Super. 2011) (cleaned up).

> APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. . . . APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

**Schenk v. Schenk**, 880 A.2d 633, 644-45 (Pa.Super. 2005) (cleaned up).

"In ruling on a claim for [APL], the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." **Childress v. Bogosian**, 12 A.3d 448, 463 (Pa.Super. 2011) (internal quotation marks omitted). If the court finds that APL is due, "there is a rebuttable presumption that the guideline-calculated support amount is the correct support amount." Pa.R.C.P. 1910.16-1(d). "The presumption is rebutted if the trier-of-fact concludes in a written finding or states on the record that the guideline support amount is unjust or inappropriate."

Pa.R.C.P. 1910.16-1(d)(1). The following factors are applicable to a decision

to deviate from the guideline amount:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or *alimony pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

Wife's position is that the support guidelines set the amount of a party's

reasonable needs, and that they must be applied unless one of the specifically-

enumerated bases for deviation warrants a different amount. **See** Wife's brief

at 33-35. She contends that the fact that disparate costs of living between

the United States and Jordan render the guideline amount more than adequate

to meet her needs is not a valid basis for deviation. **Id**. at 49-53. Wife further

argues that none of the Rule 1910.16-5(b) factors was relied upon below in

deviating downward, and none is supported by the record. **Id**. at 60-68.

Wife supports her argument with prior appellate decisions in the context of alimony and child support awards. Although the policies and rules regarding the various forms of support are unquestionably distinct,[5] on the issue of the application of the support guidelines, the courts have not distinguished among them. In ***Ball v. Minnick***, 648 A.2d 1192 (Pa. 1994), our Supreme Court broadly stated that "the amount of support, whether it be child support, spousal support or [APL], shall be determined in accordance with the support guidelines," which included the formula, grids, and deviation factors provided in the rules. ***Id***. at 1195. "The rules make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support and that any deviation must be" determined through application of the rules, which set forth "the only factors that a trier of fact may consider in determining whether to deviate." ***Id***. at 1195-96. The Court expounded:

---

[5] Child support is premised upon each parent's "duty to provide for the reasonable needs of his or her children to the best of his or her ability. This support obligation is not limited to the basic necessities of life. The children's reasonable needs include any expenditure that will reasonably further the child's welfare." ***Ball v. Minnick***, 648 A.2d 1192, 1196-97 (Pa. 1994). APL "is designed to be temporary and is available to those who demonstrate the need for maintenance and professional services during the pendency of the [divorce] proceedings." ***See***, ***e.g.***, ***Schenk v. Schenk***, 880 A.2d 633, 644-45 (Pa.Super. 2005). On the other hand, "alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." ***Llaurado v. Garcia-Zapata***, 223 A.3d 247, 256 (Pa.Super. 2019) (internal quotation marks omitted).

> The presumption is strong that the appropriate amount of support in each case is the amount as determined from the support guidelines. However, where the facts demonstrate the inappropriateness of such an award, the trier of fact may deviate therefrom. This flexibility is not, however, intended to provide the trier of fact with unfettered discretion to, in each case, deviate from the recommended amount of support. Deviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate.

*Id*. at 1196.

Addressing the child support deviation at issue in that appeal, the **Ball**

Court stated:

> In the instant matter, there was no evidence presented which established any special obligations or special circumstances justifying an award lower than the recommended guideline figure. The trial court's primary reason for deviating from the support guidelines was that the basic needs of the children could be met by a payment of less than the guideline amount. This is an impermissible basis for deviating from the guidelines.

*Id*.

This Court extended **Ball**'s holding to spousal support cases in **Terpak**

**v. Terpak**, 697 A.2d 1006 (Pa.Super. 1997). Therein, this Court made it clear

that the fact that a spouse does not need the full guideline support amount is

not a valid basis to deviate downwards. Adapting the language of **Ball**, we

held:

> the trier of fact need not, nor should he or she, consider in the first instance, the actual expenses of the parties in an effort to establish the reasonable needs of a particular child or spouse. Instead, the trier of fact must assume initially that the guideline amount constitutes the amount necessary to meet the reasonable needs of the child or spouse. . . . [A] court may not deviate from

- 14 -

the guidelines on the ground that the child or spouse does not need this amount of money.

***Terpak***, ***supra*** at 1007 (cleaned up).

In maintaining that this precedent does not warrant a conclusion that the master's deviation in the instant case was erroneous, Husband and the trial court rely upon this Court's decision in ***Carney v. Carney***, 167 A.3d 127 (Pa.Super. 2017). ***See*** Trial Court Opinion (266 EDA 2019), 4/5/19, at 5-6; Husband's brief at 8-10. In ***Carney***, the wife was receiving $5,000 per month in APL and sought a modification on the basis that her expenses were $5,800 per month. The guideline amount, based upon Husband's monthly income of nearly $57,000, was $22,000. The master granted Wife's request and increased the APL amount to $12,000 per month. The husband appealed, arguing that $12,000 was twice the amount of the wife's actual needs, and it resulted in a windfall to her. This Court affirmed, stating as follows:

> Although the trial court noted that the support guideline formula . . . suggested that wife be awarded $22,227.00 in APL each month, it found this amount was excessive under the circumstances as wife did not testify to any additional expenses or needs. Instead, the trial court modified wife's APL award to $12,000.00 each month, which it deemed appropriate to allow wife to live independently and to provide her with the resources to litigate this divorce action. As we find this award to be reasonable, we reject husband's claim that the trial court abused its discretion in modifying wife's APL award.

***Id***. at 135 (unnecessary capitalization omitted).

Hence, the issue before this Court in ***Carney*** was the husband's claim that APL in an amount that was more than twice the wife's expenses was

excessive. We were not presented with a claim that downward deviation from the guidelines was erroneous based upon analysis of the enumerated factors in the circumstances of that case. As such, to the extent that **Carney** offers guidance in the instant appeal, it is to make it clear that APL in an amount double a spouse's actual needs is not *ipso facto* unreasonable.

In the case *sub judice*, the master specifically found that Husband's "expenses are not so unusual or extraordinary so as to warrant a deviation from the guidelines." Report of Master in Support, 5/4/18, at 6. The master's decision to deviate nonetheless was explained as follows:

> Based upon [Wife's] net monthly income of $0 and [Husband's] net monthly income of $36,804.08 effective 5/30/16 and $35,165.33 effective 1/1/17, the [Pennsylvania] support guidelines recommend an [APL] order in the amount of $14,721.00 effective 5/30/16 and $14,066.00 effective 1/1/17.
>
> The evidence reflects [that Wife] has monthly expenses in the amount of $4,918.00, including $2,000.00 in monthly legal fees to litigate the instant divorce . . . .
>
> Based upon [Wife's] monthly expenses, the master finds a downward deviation in the amount of $9,221.00 monthly effective 5/30/16 and $8,566.00 effective 1/1/17 is warranted. Accordingly, the master concludes the monthly [APL] order shall be set to $5,500.00 which will allow [Wife] to meet her monthly expenses, including her costs to litigate the instant divorce action.

*Id*. at 3 (unnecessary capitalization omitted).

The trial court offered the following analysis in denying Wife's exception:

> Wife argued that her expenses were not equivalent to reasonable needs, and therefore the guidelines do not allow for a downward deviation. Wife's counsel asserted that Wife's reasonable needs under the guidelines were approximately $10,000.00 . . . but

presented no evidence to substantiate that assertion. Furthermore, there was no proof that Wife's reasonable needs were not being met by the prior order for APL. . . . The $10,000.00 a month APL proposed by Wife's counsel would be excessive based upon the testimony presented at the master's hearing, and the evidence submitted and stipulated to by the [p]arties.

Trial Court Opinion (266 EDA 2019), 4/5/19, at 5-6.

It is apparent from the foregoing that neither the master nor the trial court applied the appropriate law, which mandates that **the guideline support amount is presumed to be the correct support amount**. *See* Pa.R.C.P. 1910.16-1(d). The burden was not on Wife to prove that the guideline amount of $10,000[6] was appropriate; rather, Husband was required to produce evidence to persuade the fact-finder that the guideline amount was unjust or inappropriate, and that deviation was warranted under the statutory factors. *See* Pa.R.C.P. 1910.16-1(d)(1); Pa.R.C.P. 1910.16-5(b). He failed to do so. Furthermore, the only basis for deviation offered by the master or trial court—that Wife does not need the guideline amount to meet her expenses—has been soundly rejected by this Court. *See **Terpak**, **supra** at*

---

[6] Wife contends that the income calculation of $35,000 per month for Husband was erroneous, and that it should instead be $26,000. *See* Wife's brief at 17 n.3, 47-49. At the exceptions hearing, the parties agreed that the master had miscalculated Husband's income. *See* N.T. Hearing, 9/5/18, at 137. To her credit, Wife advocates for imposition of the lesser amount, rather than the $14,000 indicated as the guideline amount by the master.

- 17 -

1007.  In the absence of any valid basis for deviation, we must conclude that the trial court erred in denying Wife's exception.

Therefore, we reverse the trial court's September 5, 2018 order that denied wife's exceptions and entered the master's proposed order of $5,500 per month in APL as an order of court.  Upon remand the court shall enter an order in the amount dictated by the support guidelines.[7]

Jurisdiction determination affirmed.  September 5, 2018 order reversed. Case remanded for entry of an APL award consistent with this opinion. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/3/2020*

---

[7] The court may calculate the guideline amount based upon the proper calculation of Husband's 2016 income, rather than the amount utilized by the master which the parties agree was incorrect.

- 18 -