J-A15031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| RAMSHA IJAZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAIMUR AKRAM | : | |
| | : | |
| Appellant | : | No. 1207 WDA 2022 |

Appeal from the Order Entered September 15, 2022
In the Court of Common Pleas of Mercer County Domestic Relations at
No(s):  74-DR-2020

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                 **FILED: AUGUST 8, 2023**

Taimur Akram (Husband) appeals from the order entered in the Court of Common Pleas of Mercer County (trial court) awarding Ramsha Ijaz (Wife) five months of alimony *pendente lite* (APL) bringing the total APL that she received to ten months.  We affirm.

**I.**

Husband and Wife were married in Mercer County on October 22, 2018, and separated on August 25, 2019, when Wife returned to Pakistan, her native country, for a visit and her then-Husband refused to pay for a return ticket. The marriage resulted in no children.  With the help of an aunt and uncle, Wife returned to the United States where she resides in Texas with the aunt and

_____

* Retired Senior Judge assigned to the Superior Court.

uncle and where she obtained employment as a retail clerk. Husband is a medical doctor employed at UPMC. As part of the divorce decree of May 19, 2022, Husband was required to pay Wife $49,541.03, which represented 30 percent of the stipulated marital estate of $176,018.76 after expenses. Husband was also directed to pay $16,000 in attorney's fees to Wife's counsel.

Wife filed an initial request for APL in January 2020. The trial court initially awarded Wife APL of $3,856.91 per month over a period of five months, totaling $19,284.55. It determined that a five-month period for APL was appropriate considering the ten-month duration of the marriage. Wife later filed a petition to reinstate APL, but the trial court denied the request for further APL on December 9, 2020.

On December 22, 2021, following the issuance of the master's report and recommendations in the divorce matter and while exceptions were pending, Wife filed a second petition to reinstate APL. In her petition, Wife contended that additional APL was warranted because Husband was opposing her receipt of any portion of the marital estate; his insistence that they had engaged in a "sham marriage" resulting in the master's recommended award of $16,000 in attorney's fees in her favor; the fact that she was required to travel to Pennsylvania on three separate occasions to participate in hearings; and Husband's filing of 23 exceptions to the master's report. At this point, the matter was reassigned from Judge Robert G. Yeatts to President Judge Daniel P. Wallace following the former's retirement.

Following a hearing, on April 6, 2022, the trial court found that Wife was entitled to an additional five months of APL retroactive to November 17, 2021. In the opinion accompanying that order, the trial court found that APL should be reinstated because the December 9, 2020 decision was premised not only on the short duration of the marriage, but also on the fact that it was anticipated at that time that the parties' economic issues would be resolved at a final January 2021 hearing, and that the earlier determination left the door open for additional APL to be ordered at a later date. Because the economic issues were not all decided as envisioned in early 2021 but instead remained pending and in active litigation more than a year later, the trial court concluded that an additional five months of APL was "appropriate" "[c]onsidering the duration of the marriage and the date of the anticipated hearing [on Husband's exceptions to the divorce master's report] on April 8, 2022." Trial Court Opinion, 4/6/22, at 3 (unnumbered) (citing Trial Court Opinion, 12/9/20, at 1-3 (unnumbered)). *Id.* at 3. The court added that Wife would not receive any additional APL beyond ten months "absent extraordinary circumstances." *Id.* A May 10, 2022 order established the APL at $4,187.55 per month for a total of $21,018.06, pursuant to calculations by the domestic relations section of the trial court.

Husband and Wife each then filed a demand for a *de novo* hearing before the trial court. Husband challenged the necessity and reasonableness of the APL award as well as the calculated amount, while Wife challenged the fact

that the May 10, 2022 order only required Husband to pay $200 per month to satisfy his obligations. Following a hearing, on September 7, 2022, the trial court ordered that Husband's obligations remained unchanged from the May 10, 2022 order.[1] The trial court found that the amount of APL calculated according to the support guidelines was reasonable, and that its review of the deviation factors set forth in Rule 1910.16-5(b) did not show grounds to rebut the presumption of correctness. Specifically, as to the deviation factors, the court found that Husband's assets as a medical doctor far outweigh Wife's, and he has no substantial liabilities because he lives with his parents (factor (b)(5)), and that Husband has an upper middle-class standard of living, while Wife's standard was lower middle-class (factor (b)(7)).

With respect to factor (b)(8) related to the duration of the marriage, the court referred to the analysis in its April 6, 2022 memorandum opinion. With respect to "other relevant and appropriate factors" as set forth in (b)(9), the trial court discussed Husband's argument that Wife did not need the APL and found that a party's need is not strictly a requirement and instead that the question is only whether the amount is reasonable for the purpose of equalizing the economic resources of the spouses. The court, thus, rejected Husband's argument that the amount of APL far exceeds the amount

---

[1] A September15, 2022 order amended the September 7, 2022 order to require Husband to pay the arrearage at a monthly rate of $4,187.55 rather than $200 per month.

necessary for Wife to pursue the divorce proceedings on equal footing as only reasonableness is required, and the reasonableness was bolstered by the short duration of the additional APL award. *Id.* at 5-6.

Husband presents the following issues before this Court:

1. Did the trial court err in not giving factor 1910.16-5(b)(8), concerning the length of the marriage, proper weight?

2. Did the trial court err in failing to reduce the APL award under 1910.16[-]5(b)(9), concerning other relevant factors, when the award was unnecessary and unreasonable?

Husband's Brief at 4 (unnecessary capitalization and suggested answers omitted).

## II.

The Divorce Code provides that, "[i]n proper cases, upon petition, the court may allow a spouse reasonable" APL, which is defined as "[a]n order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding." 23 Pa.C.S. §§ 3103, 3702(a).

APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare. . . . APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

*Ileiwat v. Labadi,* 233 A.3d 853, 860 (2020) (quoting *Schenk v. Schenk*, 880 A.2d 633, 644-45 (Pa. Super. 2005)); *see also Cook v. Cook*, 186 A.3d 1015, 1023 (Pa. Super. 2018). When ruling on the claim for APL, the trial

court shall consider the following factors: "the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties." *Ileiwat*, 233 A.3d at 860 (quoting *Childress v. Bogosian*, 12 A.3d 448, 463 (Pa. Super. 2011)). The court shall also consider "the marriage's duration, *i.e.*, the date of marriage to the date of final separation," when determining the duration of the APL award. Pa.R.Civ.P. 1910.16-1(c)(2).

If the court finds that APL is due, "there is a rebuttable presumption that the guideline-calculated support amount is the correct support amount." Pa.R.Civ.P. 1910.16-1(d); *see also Ileiwat*, 233 A.3d at 860. "The presumption is rebutted if the trier-of-fact concludes in a written finding or states on the record that the guideline support amount is unjust or inappropriate." Pa.R.Civ.P. 1910.16-1(d)(1). In determining whether to deviate from the guideline, "[t]he trier-of-fact shall consider the child's and parties' special needs and obligations and apply the [Rule 1910.16-5(b)] deviation factors, as appropriate." Pa.R.Civ.P. 1910.16-1(d)(2). The Rule 1910.16-5(b) factors include:

> (1) unusual needs and unusual fixed obligations;
>
> (2) a party's other support obligations;
>
> (3) other household income;
>
> (4) the child's age;
>
> (5) the parties' relative assets and liabilities;

(6) medical expenses not covered by insurance;

(7) the parties' and the child's standard of living;

(8) . . . the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the child's best interest.

Pa.R.Civ.P. 1910.16-5(b).

### III.

### A.

Husband contends that the trial court abused its discretion by awarding five more months of APL by not giving proper weight to the duration of the marriage in deviating from the support guidelines calculation of the amount of APL calculated under Rule 1910.16-5(b)(8). **See** Pa.R.Civ.P. 1910.16-5(b)(8) (requiring that the court consider "the duration of the marriage from the date of marriage to the date of final separation" when assessing whether to deviate from the guideline). He contends that the trial court should not have used the duration to cap the possible APL award but, instead, should have used it as a factor in reducing the amount of APL.

Moreover, he argues that the commentary to Pa.R.Civ.P. 1910.16-1(c)(2) requires consideration of the marriage's duration when determining the length of the APL award because one of the primary purposes of this provision is to allow the party paying APL the "opportunity for credit for these payments at the time of equitable distribution." Pa.R.Civ.P. 1910.16-1,

Explanatory Comment—2010. Because the equitable distribution was not finalized until the May 19, 2022 divorce decree, Husband argues that "there was absolutely no opportunity to obtain credit due to the timing of the final APL decision." Husband's Brief at 15.

Husband's argument that the trial court erred by not considering the duration of the marriage as a factor to deviate from the amount of APL as opposed to the duration of the APL award is waived because it was not included in his Pa.R.A.P. 1925 concise statement. *See* Concise Statement, 10/31/22; Order, 10/12/22 (directing Husband to file concise statement and that any issues not raised therein shall be deemed waived). Husband does not reference Rule 1910.16-5(b)(8) in his concise statement, nor does he argue that the APL amount should have been reduced based upon the short duration of the marriage. Moreover, Husband did not raise the potential reduction of the APL award based upon the duration of the marriage in his May 19, 2022 demand for a *de novo* hearing concerning the May 10, 2022 order that set the APL amount or at the August 4, 2022 hearing. *See* Demand for Hearing, 5/19/22, at 1-2 (unnumbered); N.T., 8/4/22, at 1-16. While this latter fact may not be dispositive as the trial court was required to consider the Rule 1910.16-5(b) deviation factors as appropriate, *see* Pa.R.Civ.P. 1910.16-1(d)(2), the trial court did, in fact, address each of the factors in its September 7, 2022 opinion.

As to Husband's contention that the trial court abused its discretion by not giving proper weight in awarding five additional months of APL for the duration of the marriage, which is not waived, his argument here appears to be limited to the issue of his apparent lack of an opportunity to claim a credit at equitable distribution lacks merit. First, it should be noted that the trial court, as required by Rule of Civil Procedure 1910.16-1(c)(2), did consider the duration of the marriage when determining the length of the additional months of APL. Second, the commentary on the rule that discusses a potential credit for APL paid at the time of equitable distribution appears to envision that such credit is available "when the obligor is required to pay support over a substantially longer period of time than the parties were married"; such is not the case here and, therefore, it is not clear that he would be able to claim a credit.[2] Finally, his claim is factually inaccurate as he did have an opportunity to claim a credit prior to equitable distribution: the amount of APL was fixed in a May 10, 2022 order, while the divorce decree finalizing the equitable distribution was filed on May 19, 2022.

---

[2] **See** Pa.R.Civ.P. 1910.16-1, Explanatory Comment—2010 ("Subdivision (c) has been amended to require the court to consider the duration of the marriage in determining the duration of a spousal support or alimony pendente lite award. . . The primary purpose of this provision is to prevent the unfairness that arises in a short-term marriage when the obligor is required to pay support over a substantially longer period of time than the parties were married and there is little or no opportunity for credit for these payments at the time of equitable distribution.").

**B.**

Husband next argues that the additional five months of APL was unreasonable and unnecessary considering the prior APL award and the award of attorney's fees. Husband notes that Wife had already received 30 percent of the marital estate, or $49,541.03, and that the award of attorney's fees ($16,000), the first APL award ($19,284.55), and the second APL award at issue here ($21,018.06), collectively result in Wife's receipt of over $105,000, which is equivalent to an award of 60 percent of the marital estate.

He contends that the second APL award far exceeds the reasonable needs of Wife because she has already received $35,284.55 in APL and attorney's fees before the latest award of APL. He claims that amount was sufficient to pay her monthly legal fee of $1,250 set forth in her monthly budget submitted in the divorce matter, as well as her remaining expenses over a 12-month period, with money left over. He also submits that the second APL award cannot be justified as support, as she has minimal expenses because she lives with her aunt and uncle.

While Husband is correct that "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding," *Ileiwat*, 233 A.3d at 860 (citation omitted), the test in assessing the amount of APL is whether it is "reasonable for the purpose." *Id.* (quoting *Schenk*, 880 A.2d at 644); *see also Cook*, 186 A.3d at 1023. In other words, there is no requirement that the court make a dollar-for-dollar comparison of the shortfall

- 10 -

in the beneficiary of the APL to ascertain exactly how much money is needed to be on equal footing with the payer of the APL. If an exact calculation of need were required, then the rules would not set forth a rebuttable presumption that the guideline amount of support is appropriate. Pa.R.Civ.P. 1910.16-1(d); *Ileiwat*, 233 A.3d at 860. This presumption may be rebutted if the trial court determines, after consideration of the relevant factors and other special needs or obligations, that the award would be unjust or inappropriate, Pa.R.Civ.P. 1910.16-1(d)(1)-(2); this analysis does not require a line-by-line analysis of the beneficiary's budget to determine whether the APL is absolutely necessary.

Here, the trial court engaged in the required analysis and determined that the additional amount of APL was not unjust or inappropriate. This analysis has support in the record and Husband has not demonstrated that the court's conclusion was beyond the bounds of its discretion. Husband's arguments that the amount of APL paid to Wife are inappropriate conflate APL with the equitable distribution and attorney's fee award, all of which relate to different issues. Even if the total APL award ($40,302.61) was averaged out over the entire litigation history (28 months), it would be a monthly amount of $1,439.37, which, when added to her net income, would only slightly exceed her monthly expenses. Furthermore, if the APL were averaged over the current appeal, then the monthly support would be only $1,119.51. **See** **Childress v. Bogosian**, 12 A.3d 448, 463 (Pa. Super. 2011) (noting that APL

is based upon the state of the litigation); ***DeMasi v. DeMasi***, 597 A.2d 101, 104 (Pa. Super. 1991) (same and stating that divorce is not final until decree is entered and appeals from the decree are finally resolved). In any event, the APL award was not simply based upon Wife being able to pay her lawyer, but also to allow her the resources to engage in the "domestic warfare" of a divorce. ***Ileiwat***, 233 A.3d at 860 (citation omitted). Similarly, the equitable distribution award was a division of the parties' marital property and has minimal relevance to the APL analysis.

Furthermore, the second award of APL, which was retroactive to November 2021, concluded by the time of the divorce decree. The ten months of total APL was far shorter than the divorce case that lasted over two years and was characterized by protracted, combative litigation, including three separate hearing dates each of which required Wife's travel, numerous exceptions to the master's report, and Husband's obstinate refusal to admit that his marriage to Wife was legitimate or to initially allow her any amount of equitable distribution from the marital estate.[3]

---

[3] Husband also contends that the APL award was motivated by the bias towards Husband exhibited by President Judge Daniel P. Wallace, who presided over the proceedings related to Wife's second petition to reinstate APL. ***See***, ***e.g.***, Husband's Brief at 24 ("the transcript from this August []4, 2022, hearing shows a very clear and present bias against Husband"). Husband argues that his "wealth was considered far too prominently" by Judge Wallace who described Husband as being analogous to a "rock star" with a large income. ***Id.*** at 21-22 (quoting transcript). Husband also raises Judge Wallace's apparent criticism of his right to appeal, his refusal to settle and his
*(Footnote Continued Next Page)*

Accordingly, for the foregoing reasons, we find that the trial court did not abuse its discretion in awarding an additional five months of APL.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8 /8/2023

---

decision not to seek a prenuptial agreement after a prior divorce. (This appeal involves Husband's third marriage.) *Id.* at 22-26. This argument of bias by President Judge Wallace is waived as it is in no way encompassed within his Pa.R.A.P. 1925 concise statement, which does not raise any issue related to bias.