J-A21020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER L. TRAPASSO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH G. TRAPASSO | : | |
| | : | |
| Appellant | : | No. 293 EDA 2021 |

Appeal from the Decree Entered March 17, 2021
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  No. C-48-CV-2013-03559

BEFORE: KUNSELMAN, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:         **FILED NOVEMBER 19, 2021**

Joseph G. Trapasso (Husband) appeals from the decree divorcing Husband and Heather L. Trapasso (Wife).  Husband challenges the valuation of marital property and the award of alimony *pendente lite* (APL) to Wife.  We affirm based on the trial court's opinion.

We state the facts as presented in the master's report, which was adopted by the trial court:

> The parties were married on September 25, 2004.  The parties separated on April 18, 2013.  There were no children resulting from the marriage and this was the first marriage for both parties. Wife was 47 years old at the date of the hearing.  There was no testimony regarding any medical issues.  During the marriage, Wife obtained a degree in nursing as well as a master's degree. Based upon her prior work experience and her education, Wife developed a specialized career as a medical writer.  In this occupation, Wife contracts with various pharmaceutical companies to assist them in preparing and editing documents which are then submitted to "health authorities" for approval.  These health authorities are typically governmental agencies both domestic and international.

During the marriage, Wife established her business, Rite Idea Enterprises ("Rite Idea"), for which she is the sole employee. Rite Idea has few hard assets, consisting mainly of office equipment utilized by Wife, and the value of this entity is almost entirely Wife's expertise, goodwill, and professional reputation. Wife operated Rite Idea from a home office at 1658 Briarwood Circle ("Briarwood Home"), the marital residence.

As of the date of the hearing, Wife was earning in excess of $390,000 annually through Rite Idea. Despite her large salary, Wife had failed to amass the expected level of savings, assets, or retirement plans. The testimony revealed that during the marriage, Wife would spend lavishly on luxury items. Fortunately for Wife, she will continue to command a substantial salary post-divorce. Her strong earning ability will allow her to support her reasonable needs, continue her upper-class lifestyle, while also amassing retirement and savings accounts for the future. As an example of Wife's current financial abilities, after the date of separation, she purchased her own home and is now building equity in this asset. Her high income is also aided by the likely additional working years Wife will have over [H]usband due to her being ten years younger.

Husband was 58 years old at the date of the [hearing]. There was no testimony regarding any medical issues. Husband is a licensed physician, specifically in oncology, currently employed by St. Luke's Physician Group ("SLPG"). At the time of the hearing, Husband was earning over $500,000 annually. Husband completed his training and education prior to the date of marriage and was a partner within the medical practice then known as Urology Specialists of the Lehigh Valley, P.C. ("USLV").

In 2017, well after separation, USLV was bought out by SLPG in a purchase agreement that included a price for USLV itself as well as employment agreements for the shareholder-physicians of USLV. . . . In contrast to Wife, Husband lives a frugal lifestyle. As a result, Husband has amassed considerable savings and retirement assets. He will continue to earn a substantial salary thus enabling him to continue to support himself, meet all his reasonable needs, and continue to set funds aside for the future. Additionally, Husband has a number of non-marital assets and thus, considerable savings beyond the marital estate divided within this report.

During the marriage, the parties maintained individual banking and credit card accounts and indeed much of their financial lives remained separate. Husband was primarily responsible for the home expenses of the couple. Husband paid the mortgage and real estate taxes on the Briarwood Home, the utility bills, entertainment expenses, and travel. Husband also supported Wife's efforts to increase her earning potential by loaning her funds for school and providing support typical within a marriage. It was uncontradicted that Wife did pay Husband back for all the sums he loaned her for education. Wife was responsible for the expenses pertaining to their show dogs, which were not insignificant. There was testimony that Wife would take charge of various renovation projects on the marital home and that she would also contribute to these projects financially. These projects, however, seem to have done little to increase the equity in the Briarwood Home. . . .

Husband has remained at the Briarwood Home and all ownership documents and any financial obligations on the same are in his name alone. The home was purchased immediately prior to the marriage by Husband. . . .

At the date of the hearing, both parties commanded substantial salaries. During the marriage, however, this was not always the case. In fact, Wife's income increased dramatically during the marriage as Rite Idea became a successful business. At one point during the marriage, Wife out-earned Husband's salary from USLV.

Master's Report, 3/20/20, at 3-7; *see also* Order, 1/4/21 (adopting, as modified, the master's report).

Each party filed exceptions to the master's report, which the trial court resolved on January 4, 2021. *See* Order, 1/4/21. The trial court did not immediately file a divorce decree. On February 3, 2021, Husband filed a premature notice of appeal from the trial court's January 4, 2021 order. The

- 3 -

trial court subsequently filed a divorce decree on March 17, 2021.[1]  Decree, 3/17/21.

Meanwhile, on February 10, 2021, the trial court ordered Husband to comply with Pa.R.A.P. 1925(b), and service occurred on February 11, 2021. Order, 2/10/21; Docket.   On March 8, 2021, the trial court docketed Husband's Rule 1925(b) statement, which was dated March 3, 2021.[2]

Husband raises the following issues:

1.     Did the [trial] court err in adopting the master's recommendation that the decrease in value of [Husband's] pre-marital property was limited to $52,000.00 as opposed to $263,000.00 that existed on date of separation and had zero value on date of distribution and a negative value of another $125,000.00 on date of distribution, contrary to the mandates of [23 Pa.C.S. § 3501(a.1)?].

2.     Did the [trial] court err in adopting the master's recommendation that [Wife] was entitled to additional growth of [Husband's] pre-marital property after the date of separation where that growth resulted in a greater amount of the increase in [Husband's] marital property, contrary to [23 Pa.C.S. § 3501(a.1)]?

_____

[1] This Court held that Husband's appeal is properly us.  **See** Order, 4/9/21 (stating that "upon [this Court's] docket review, and after [this Court's] receipt of an updated trial court docket evincing that the divorce decree was entered on the trial court docket on March 17, 2021, this appeal will be treated as timely filed" (citations omitted)); **see also Campbell v. Campbell**, 516 A.2d 363, 366 (Pa. Super. 1986) (*en banc*) (holding that an appeal filed before the trial court enters a final decree is "rendered final by the entry of a decree in divorce" (footnote omitted)).

[2] Attached to Husband's Rule 1925(b) statement was a completed United States Postal Service Form 3817, which reflects a service date of March 3, 2021.  Because Husband complied with Rule 1925(b)(1), which permits the use of USPS Form 3817, we therefore conclude that Husband timely filed his court-ordered Rule 1925(b) statement.

3.    Did the [trial] court err in granting and extending alimony *pendente lite* to [Wife] where she consistently earned a [substantial] income, at times greater than Husband, and produced no evidence as to "need"[?]

Husband's Brief at 3.

In support of his first issue, Husband argues that the trial court erred in calculating the value of his USLV interest. *Id.* at 10.  By way of background, the parties stipulated that the value of Husband's USLV interest on the date of marriage was $52,695, and the value on the date of separation was $236,734.  R.R. at 18a-19a.[3]  On the date of the parties' distribution hearing, however, the value of Husband's USLV interest was $0, and Husband had to pay a further $125,000 to complete the sale of USLV.  *Id.* at 328a-30a.  The trial court held that Husband lost $52,695 and that he was entitled to offset that loss against any increase in the value of his other nonmarital property. *See, e.g.*, Trial Ct. Op., 1/4/21, at 12-13.

On appeal, Husband disagrees with the "start" date used to calculate the value of his USLV interest.  Specifically, instead of using the date-of-marriage valuation of $52,695, Husband argues that the trial court should have used the date-of-separation value of $236,734.  Husband's Brief at 11. Husband therefore reasons that the value of his USLV interest was negative $361,734, which represents the complete loss of $236,734, plus the additional

_____

[3] We may cite to the reproduced record for the parties' convenience.

$125,000 he paid. ***Id.*** at 10-11. Husband asserts that under 23 Pa.C.S. §

3501(a.1), any decrease in the value of any nonmarital property "can be used

as an offset." ***Id.*** at 11.

Wife counters that Section 3501(a.1) states that the "start" date must

be the date of marriage. Wife's Brief at 2. Wife therefore reasons that

Husband's maximum loss is $52,695, *i.e.*, the date-of-marriage value of

Husband's USLV interest. ***Id.*** at 4.

The trial court addressed this issue as follows:

> Upon review, we find no error of law or abuse of discretion in the
> Master's determination of the marital value of Husband's interest
> in USLV. The Master properly assessed the credibility of
> Husband's expert witness, Mr. LeMaster, and credited his
> testimony that the sale of USLV allowed the four shareholders,
> including Husband, to satisfy more than three million dollars in
> outstanding corporate debt, wind down the business, and begin
> instead working as employees of St. Luke's. The Master
> reasonably found that the value of Husband's interest in USLV
> was, at the time of the hearings, zero dollars. Because the
> stipulated value at the time of the parties' marriage was $52,695,
> and because the Master is directed by law to the use the lesser of
> the value at the time of separation or the value at the time of the
> hearing, the Master properly found a decrease in value of $52,695
> to serve as an offset against the gains of other pre-marital assets.

Trial Ct. Op., 1/4/21, at 13, 24 (stating that the "Master's Report directly

addresses [Husband's] argument that his loss should be much higher, more

than $300,000, by noting that no such loss was proven at the hearing. We

agree that the record does not support a decrease in value in excess of

$52,695"); Master's Report, 3/20/20, at 15 n.7 (stating that "[w]hile Husband

maintains in his post hearing letter brief that he is entitled to a credit for a

decrease in the amount of $361,734[,] this sum was not proven at the hearing nor was the argument and math used within Husband's brief persuasive as to that figure").

The standard of review follows:

Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Goodwin v. Goodwin*, 244 A.3d 453, 458 (Pa. Super. 2020) (citations omitted and formatting altered), *appeal granted*, --- A.3d ---, 2021 WL 4204802 (Pa. filed Sept. Sept. 16, 2021).

With respect to the valuation of marital property in "effectuating the equitable distribution of marital property," *id.*, courts are guided by Section 3501(a.1) of the Domestic Relations Code:

**(a.1) Measuring and determining the increase in value of nonmarital property.**—The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the nonmarital property of a party shall be offset against any increase in value of the nonmarital property of that party. However, a decrease in value of the nonmarital property of a party shall not be offset against any increase in value of the nonmarital property of the other party or against any other marital property subject to equitable division.

23 Pa.C.S. § 3501(a.1).

"While the Divorce Code does not require a specific methodology for assessing an asset's value, it is beyond peradventure that the chosen methodology must represent an accounting of the asset's total value." *Mundy v. Mundy*, 151 A.3d 230, 237 (Pa. Super. 2016).

Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Biese v. Biese*, 979 A.2d 892, 897 (Pa. Super. 2009) (citations omitted and formatting altered).

Instantly, Section 3501(a.1) requires using the parties' date of marriage as the initial "start" date for determining any increase in the value of Husband's USLV interest. *See* 23 Pa.C.S. § 3501(a.1) (stating that "[t]he

- 8 -

increase in value of any nonmarital property . . . shall be measured from the date of marriage"). The parties stipulated that the value of Husband's USLV interest was $52,695 on the date of the parties' marriage, and therefore, the trial court did not abuse its discretion. *See Biese*, 979 A.2d at 897.

To the extent Husband challenges the calculation of the loss, Husband did not establish any abuse of discretion by the trial court because Husband's proposed loss value uses the date-of-separation value but Section 3501(a.1) requires using the parties' date of marriage as the initial "start" date. *See id.* Regardless, even if the trial court could use the date-of-separation value as the "start" date, we agree with the trial court that it did not abuse its discretion by holding that Husband failed to establish the proposed loss value at the hearing because it was well within the trial court's discretion to "accept all, part or none of the evidence as to the true and correct value of the property." *See id.* The trial court acted within its discretion to reject Husband's proposed loss value and accept Wife's proposed loss value. *See id.*

In support of his second issue, Husband argues that the trial court erred by adopting the master's figures for the increase in value of the marital portion of two of his non-marital properties. Husband's Brief at 13. By way of background, Jonathan Cramer, Wife's valuation expert, testified that he excluded postseparation contributions and payments in calculating the value of the marital portions of the properties in question. R.R. at 200a. Mr. Cramer testified that he did his best to separate the marital from the nonmarital

contributions, but he did not have all of the required financial statements. *Id.* at 180a, 219a-20a.

> Husband cross-examined Mr. Cramer as follows:
>
> [Husband's counsel]. And you're aware that that statement that all nonmarital -- marital assets such as this, that the increase in value, for purposes of equitable distribution, is to be either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase?
>
> [Mr. Cramer]. Correct. And I didn't know -- you quoted from my report, but you didn't say the last sentence of the paragraph. I have noted the limitation of that report, and I say, [i]f historical statements had been made available to me to allow the calculation the way you're describing it, I would amend the report. But I was not provided with necessary statements to do the exact calculation that you're referring to.
>
> [Husband's counsel]. But your calculation would still be -- would still result in a value that is greater than the value of the date of separation; correct?
>
> [Mr. Cramer]. Correct, because I'd be including earnings on the marital contributions. Contributions made into the account during the marriage, in my opinion, are marital property and should include earnings postseparation. I do agree with you that the increase in value of nonmarital property, which would be the premarital balance, should be cut off at the date of separation, if that provides for a lesser increase than as of the current date. But we don't have statements from 2004, 2013, so I can't make the calculation in accordance with the letter of the law. This is the best I can do with what I have.

R.R. at 213a-15a. In other words, because Mr. Cramer did not have statements post-dating the parties' date of separation, he could not calculate an alternative figure. *See id.*

On appeal, Husband argues that the trial court should have considered only "the increase in value of the non-marital property [up] to the date of separation [and] not any increase in value of any portion of the non-marital asset as of the date of the [equitable distribution] hearing." Husband's Brief at 18. Husband emphasizes that "Section 3501(a.1) is explicit that the marital portion of a non-marital asset is to be calculated from the date of marriage to the date of separation, only." *Id.* at 19.

In Wife's view, Husband "had the burden to provide sufficient credible evidence" of any nonmarital asset. Wife's Brief at 4. Regardless, Wife argues that her marital asset valuations omitted "any growth . . . after the date of separation" and any "post-separation contributions and any growth on those contributions." *Id.* at 6.

We have previously set forth the applicable law above. In relevant part, as quoted above, "the court is free to accept all, part or none of the evidence as to the true and correct value of the property." *Biese*, 979 A.2d at 897 (citation omitted).

Instantly, as stated, Section 3501(a.1) provides that the "increase in value of [the marital portion of] any nonmarital property . . . shall be measured from the date of marriage . . . to **either** the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase." *See* 23 Pa.C.S. § 3501(a.1). Therefore, to the extent Husband argues that the date of separation is the

only permissible date, Husband is incorrect. **See id.** Further, to the extent Husband's argument can be construed as a challenge to the calculation of the value, the trial "court [was] free to accept all, part, or none of the evidence as to the true and correct value" of the increase in value of any nonmarital property. **See Biese**, 979 A.2d at 892. The parties presented different values for the calculation of marital assets. Husband presented one set of values, which used the date of separation as the end point for his marital assets calculation, and Wife presented her set of values, which used the same date of separation. **See** R.R. at 200a (reflecting Mr. Cramer's testimony that he did not include post-separation contributions and payments); **id.** at 213a-15a (reflecting Mr. Cramer's testimony that he could not calculate any post-separation figures). Upon careful review of the parties' arguments, the record, and the trial court's opinion, we agree with and adopt the trial court's reasoning that it did not abuse its discretion in accepting Wife's values based on its analysis and review of the record. **See Biese**, 979 A.2d at 897.

Lastly, Husband argues the trial court erred in awarding APL to Wife, specifically thirty months of APL for a total of $75,660. Husband's Brief at 20, 23-24. In Husband's view, Wife failed to present "relevant evidence" of her "circumstances or her 'need' with regard to lifestyle or the cost of the divorce litigation." **Id.** at 20. Husband emphasizes that Wife earned over $345,000 in 2013 (when the parties separated), over $440,000 in 2014, and over $283,000 in 2016. **Id.** at 22. Because Wife failed to establish her burden of

proof for APL, Husband asserts that he improperly paid her thirty months of APL, totaling $75,660. *Id.* at 23-24.

Wife counters that Husband misstates the burden of proof. Wife's Brief at 9. Wife explains that the guideline support amount is presumed correct and that Husband was required to establish error in the guideline support amount. *Id.*

The standard of review for a grant of APL follows:

> If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court. Further, in ruling on a claim for alimony *pendente lite*, the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties.

*Strauss v. Strauss*, 27 A.3d 233, 236 (Pa. Super. 2011) (citations omitted and formatting altered); *see also* 23 Pa.C.S. §§ 3702, 4322. "The guideline support amount is presumed to be the correct support amount." *Ileiwat v. Labadi*, 233 A.3d 853, 863 (Pa. Super. 2020) (emphasis and citation omitted). Because the guideline support amount is presumed correct, the burden is on the person opposing the APL amount "to produce evidence to persuade the fact-finder that the guideline amount was unjust or inappropriate, and that deviation was warranted under the statutory factors." *Id.* (citations omitted). An argument that the APL recipient does not "need the guideline amount to meet [the recipient's] expenses has been soundly rejected by this Court." *Id.* (citation omitted and formatting altered).

After careful review of the record, the parties' briefs, and the trial court's opinion, we affirm this issue based on the trial court's reasoning. ***See*** Trial Ct. Op., 3/31/21, at 9-15. We agree with the trial court that it did not abuse its discretion as the record supports the calculation of the APL amount, and this Court has rejected Husband's argument that Wife must establish a need for APL. ***See Labadi***, 233 A.3d at 863; ***Strauss***, 27 A.3d at 236. For these reasons, we affirm the decree on the basis of the trial court's opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021

IN THE COURT OF COMMON PLEAS OF
NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

| | | |
|---|---|---|
| HEATHER L. TRAPASSO, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. C-0048-CV-2013-3559 |
| v. | : | |
| | : | |
| JOSEPH G. TRAPASSO, | : | |
| Defendant | : | IN DIVORCE |

**FILED**

## OPINION OF THE COURT

Presently before the Court are exceptions to the Divorce Master's Report filed by both the Plaintiff, Heather L. Trapasso, and the Defendant, Joseph G. Trapasso. This matter was argued before the Court on October 27, 2020 and is now, following a review of the record and the briefs filed by the parties, ripe for disposition.

## FACTUAL BACKGROUND/PROCEDURAL HISTORY

On April 18, 2013, Plaintiff Heather Trapasso ("Plaintiff" or "Wife") filed a Complaint in Divorce against Defendant Joseph Trapasso ("Defendant" or "Husband"). The parties were married on September 25, 2004 and separated on April 18, 2013. A Master's Hearing was held on the 22nd and 23rd of January 2020, at which counsel for both parties presented evidence and testimony before Special Master Jeremy F. Clark, Esquire. The Master filed his Report on March 20, 2020. The Master's Report concludes that neither party is entitled to alimony or counsel

fees. With respect to equitable distribution of the marital property, the Master recommends that Husband shall transfer to Wife a sum of $821,241.00 from his qualified assets, and that Husband shall transfer to Wife several pieces of art located in the former marital home now occupied by Husband.

On April 15, 2020, Plaintiff filed seven (7) exceptions to the Master's Report. On May 11, 2020, Defendant filed eight (8) exceptions to the Master's Report. On September 21, 2020, Plaintiff filed a brief in support of her exceptions. On October 6, 2020, Defendant filed a brief in support of his exceptions. On October 20, 2020, Defendant filed a response in opposition to Wife's exceptions. On October 26, 2020, Plaintiff filed a brief in opposition to Defendant's exceptions.

## STANDARD OF REVIEW

A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties. *See* Cook v. Cook, 186 A.3d 1015 (Pa. Super. 2018). "[T]he report of a master is entitled to great consideration . . . [and] it should not be disregarded lightly." Arcure v. Arcure, 281 A.2d 694, 695 (Pa. Super. 1971). However, "the reviewing Court is not bound by it and it does not come to the Court with any preponderate weight or authority which must be

2

overcome." <u>Arcure</u>, 281 A.2d at 695. The correct standard of review is *de novo*. *See* <u>id.</u> Accordingly, when a party files exceptions to the master's report, the trial court is required to make an independent review of the report and recommendations to determine whether they are appropriate. *See* <u>Kohl v. Kohl</u>, 564 A.2d 222, 224 (Pa. Super. 1989), aff'd 585 A.2d 463 (Pa. 1991). "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole." <u>Morgante v. Morgante</u>, 119 A.3d 382, 387 (Pa. Super. 2015).

## DISCUSSION

We will first examine each of the Plaintiff's exceptions. Thereafter, we will examine each of the Defendant's exceptions.

### Plaintiff's Exception No. 1:
### Increased Value of Property at 1658 Briarwood Circle

Plaintiff argues that the Master abused his discretion and/or erred as a matter of law by finding that the increased value of the property at 1658 Briarwood Circle (the "Briarwood Home") was $10,000 when the parties specifically stipulated that the increased value of the property was $193,500. *See* N.T. 1/22/20 at 17; *see also* N.T. 1/22/20 at 206:2-4 (Husband acknowledging marital value of the Briarwood Home was $193,500). Plaintiff contends that the Master mistakenly utilized a different value than the one agreed upon by the parties nor did he address or explain his deviation from the stipulated value. Plaintiff therefore asks the Court to

3

grant the exception and use the value of $193,500 for the purpose of equitable distribution.

Defendant responds that the parties stipulated that the fair market value of the Briarwood Home increased by $10,000 during the parties' marriage, *see* N.T. 1/22/20 at 5. Defendant argues that there is no dispute that the Briarwood Home was pre-marital and owned solely by Husband,[1] and that Wife bears the burden of proving her claim on Husband's pre-marital property, upon which Wife admitted she made no contribution toward mortgage payments.

In this matter, the parties disagree about the nature of their stipulation. Plaintiff avers that the stipulation was that the "total increase in value of the asset during the course of the marriage" was $193,500, *see* Brief in Support of Plaintiff's Exceptions p. 1. Defendant asserts that the parties "stipulated that the fair market value of [the] 1658 Briarwood Circle property increased by $10,000 during the parties' marriage." *See* Defendant's Response to Plaintiff's Brief p. 1. The transcript of the proceedings before the Master reflects this apparent disagreement and/or confusion. Just after a list of stipulations was marked as Joint Exhibit No. 1 and admitted into the record, the following exchange occurred:

> THE MASTER: All right. Whoever would like to
> read those onto the record can.

---

[1] Husband purchased the Briarwood Home for $640,000 on May 24, 2004. The parties were married on September 25, 2004. Defendant argues that the parties stipulated to an increase in fair market value of $10,000 (from $640,000 to $650,000) between the date of their marriage and the date of their separation on April 18, 2013.

4

MS. EIDELMAN [Counsel for Defendant]: Since Attorney Zamborsky prepared this, he can read it. I will just state there are certain modification to this, so I'll state them as he goes through them.

THE MASTER: Okay. Attorney Zamborsky.

MR. ZAMBORSKY [Counsel for Plaintiff]: Certainly. The -- Number one, the fair market value of 1658 Briarwood Circle property increased by $10,000 during the parties' marriage.

THE MASTER: So, no change to that one, Attorney Eidelman?

MS. EIDELMAN: No.

THE MASTER: Okay.

N.T. 1/22/2020 at 5:4-16. However, just a few pages later, the following exchange appears in the transcript:

THE MASTER: All right. Let's go back on the record. There are a few other stipulations, I understand, Counsel.

MR. ZAMBORSKY: Yes, that's correct. Number one, that the increase in value of the marital residence located at 1658 Briarwood Circle, Bethlehem, Pennsylvania is $193,500.

MS. EIDELMAN: That's agreed.

THE MASTER: $193,500, which is the increase in value from what date to what date?

MS. EIDELMAN: Date of marriage to date of separation.

5

THE MASTER: Okay.

MS. EIDELMAN: That also is a premarital asset.

THE MASTER: Oh, okay. I understand. ...

N.T. 1/22/2020 at 17:10-24. The Master's Report ultimately defined this portion

of the marital estate as follows: "The increase in value of 1658 Briarwood Circle

("Briarwood Home"), a pre-marital asset of Husband owned in his name alone, of

$10,000 a value stipulated by the parties at the time of the hearing." Master's

Report at 9.

The Master's Report notes that the Briarwood Home was purchased by

Husband just prior to the parties' marriage, that title was held solely in his name,

and that he paid all expenses associated with the home. *See* Master's Report at 6-7.

The Master considered Wife's exhibit purporting to show funds that she had

expended toward "upgrades" to the property, but found credible other testimony

presented at the hearing that these purchases were made "without consulting

Husband and he often felt they were unnecessary." Id. at 7. Wife would take

charge of various renovation projects, but "[t]hese projects, however, seem to have

done little to increase the equity in the Briarwood Home." Id. at 6.

In light of the confusing testimony on this issue and the parties' subsequent

expression of disagreement about the nature of their stipulation(s), we cannot find

that the Master erred by accepting the $10,000 figure stated by the parties as the

agreed-to increase in the fair market value of the Briarwood Home, which was memorialized in their Joint Exhibit No. 1.[2] Accordingly, Plaintiff's Exception No. 1 is denied.

### Plaintiff's Exception #No. 2:
### Reduction of Mortgage Liability on Briarwood Home

Plaintiff next argues that, if her first exception is denied, that the Court should grant her second exception seeking an adjustment of the value of the Briarwood Home to reflect the parties' stipulation that the outstanding principal balance of the mortgage was paid down in the amount of $176,500 during the marriage. *See* N.T. 1/22/2020 at 5. Plaintiff contends that it would be an error to disregard this amount because a court must consider the "net value" or "equity value" from the date of marriage to the date of separation, not just the change in fair market value. *See* Plaintiff's Brief at 2 (citing Mundy v. Mundy, 151 A.3d 230 (Pa. Super. 2016)).

Defendant responds that Wife did not submit any evidence or testimony as to the balances of the mortgage on the date of marriage and date of separation. Because Wife must prove any facts that she wants the Master to accept, Defendant argues that wife cannot prevail on this exception.

---

[2] This Joint Exhibit was submitted to the Master and admitted into the record, although not signed by counsel or the parties. *See* N.T. 1/22/20 at 16:7-17:3.

Although Defendant is correct that Wife did not produce documentary evidence to prove the reduction in the mortgage balance on the Briarwood Home, we nevertheless do not find Defendant's argument persuasive because Defendant's counsel stipulated to that value:

> MR. ZAMBORSKY: [Stipulation] Number two, the principle [sic] balance of the mortgage note against the 1658 Briarwood Circle property decreased by the sum of $176,500 during the marriage.
>
> THE MASTER: Attorney Eidelman, is that --
>
> MS. EIDELMAN: That's agreed.
>
> THE MASTER: Okay.

N.T. 1/22/20 at 5:18-24 (emphasis added). The record reflects no dispute that the outstanding principal balance of the mortgage was paid down in the amount of $176,500 during the marriage. While "the Divorce Code does not require a specific methodology for assessing an asset's value," Mundy v. Mundy, supra at 237, in order to accurately measure the increase in equity in the Briarwood Home during the course of the marriage, the reduction of the debt encumbering the property must be considered alongside the increase in its fair market value. The amount paid toward the mortgage principal during the course of the marriage is essentially money put into savings, but invested in a real estate asset rather than a mutual fund or other more easily liquidated type of account, which would clearly be part of the marital estate. Wife is therefore "entitled to her share of any increase

8

in equity that accumulated during the … marriage." Id. We therefore grant Plaintiff's Exception No. 2. Because the increase in value of the Briarwood Home is properly calculated as the sum of the increase in the home's fair market value and the reduction in the applicable mortgage balance – and because the parties stipulated on the record that in this case those values are $10,000 and $176,500, respectively – we find that the increase in value of the Briarwood Home during the course of the marriage was $186,500.

## Plaintiff's Exception No. 3: Expert Valuation of USLV[3] Profit Sharing Plan

Plaintiff argues that the Master erred as a matter of law and abused his discretion when he failed to utilize the value established by Wife's expert, Jonathan Cramer, with regard to Husband's pre-marital USLV Profit Sharing Plan – which was subsequently rolled over into a Fidelity IRA – despite stating that he accepted Mr. Cramer's valuation methodology and resulting value. *See* Master's Report at 17 ("… the undersigned will accept the valuation figures provided by Wife's expert."). Mr. Cramer computed a marital value of $493,265.77, *see* N.T. 1/22/20 at 186:25-187:16, but the Master instead substituted an amount $11,087.77 less without explanation. *See* Master's Report at 9. Without any justification for this reduction, Plaintiff argues that the Master's determination was in error.

---

[3] "USLV" is used herein, as in the parties' briefs, as shorthand for "Urology Specialists of the Lehigh Valley, P.C.".

Defendant concedes that the Master did state that he accepted Wife's expert's testimony regarding the marital value of the USLV plan, but Defendant nevertheless argues that whether or not the Master accepted the expert's ultimate value is unclear as he never explicitly stated that he accepted the sum of $493,265.77 for the purpose of his report.

The discrepancy between Mr. Cramer's calculated figure of $493,265 and the Report's use of $482,178 for the same asset is not explained in the Report and appears inconsistent with the Master's stated acceptance of Mr. Cramer's valuation figures. The hearing testimony and substance of the Master's Report provide only support for the former amount. In light of what appears to be an inadvertent error in the Report with regard to this dollar figure, we grant Plaintiff's Exception No. 3 and find the marital value of the USLV Profit Sharing Plan to be $493,265.

### Plaintiff's Exception No. 4:
### Failure to Include National Penn Bank Account No. -3952 in Marital Assets

Plaintiff next argues that the Master erred by failing to include the stipulated value of $2,018.00, held in National Penn Bank Account No. -3952, as a marital asset subject to equitable distribution. Plaintiff avers that, given the parties' stipulation that Husband controlled and either maintained or consumed said funds, *see* N.T. 1/22/20 at 9-10, the Master erred as a matter of law and/or abused his discretion by failing to include this account in the valuation. Plaintiff requests that

these additional funds be attributed to Husband when determining equitable distribution.

Defendant responds that the Master is free to accept or reject any testimony in determining economic justice between the parties, and is afforded great discretion in fashioning a distribution to achieve that purpose. *See* Smith v. Smith, 904 A.2d 15 (Pa. Super. 2006). Defendant suggests that the Master may have felt that ignoring an asset of such minor value was part of achieving "economic justice."

We are compelled to agree with Plaintiff that the Master erred by omitting Account No. -3952 held in National Penn Bank from the marital assets set forth on pages 9 through 11 of the Master's Report. The parties stipulated that this account, valued at $2,018, was marital property. Defendant's argument, that perhaps, the Master excluded this account intentionally due to its relatively small value, is inconsistent with the fact that the Master did specifically include National Penn Bank Account No. -1727 valued at only $1,341. We believe the omission of Account No. -3952 from the Report was an inadvertent error. Accordingly, we grant Plaintiff's Exception No. 4 and attribute the amount of $2,018 to Husband for the purpose of determining equitable distribution.

11

Plaintiff contends that the Master erred by finding that Husband's ownership interest in USLV decreased by $52,695 during the parties' marriage. Plaintiff references pages 7 and 8 of the January 22, 2020 Transcript, in which the parties stipulated that the value of Husband's shares in the medical practice was $52,695 on the date of marriage and $236,734 on the date of separation, thus having increased by $184,039 during the marriage. Plaintiff also alleges that Husband, as one of the four remaining shareholders in the practice in 2017, opted to approve a sale of USLV to St. Luke's Physician Group, Inc. ("St. Luke's") for $3.8 million, and thereafter became an employee of St. Luke's rather than have the practice repurchase his shares consistent with the Shareholders' Agreement. This was four years after the parties separated. Plaintiff avers that "Husband clearly chose to abandon the increased value of his shareholder interest in USLV for a more lucrative, non-marital, and thus untouchable income." Plaintiff's Brief at 5. Plaintiff asks the Court to find that Husband's interest in USLV did not decrease by $52,695 but rather increased by $184,039 during the marriage.

Defendant responds that the Master should have found that Husband's ownership interest in USLV decreased by *more* than $52,695 and that it is undisputed, based upon the testimony of Louis Lemaster, the corporate accountant for USLV, that Husband received nothing from the sale of USLV and,

12

in fact, lost a substantial amount. Its value on the date of separation was $236,734 and, upon the sale of USLV to St. Luke's, each of the four partners had to contribute $125,000 back to the business because the sale price alone was insufficient to cover USLV's debts. Therefore, Defendant argues that the true value of the decrease of Husband's pre-marital asset was $361,734.

Upon review, we find no error of law or abuse of discretion in the Master's determination of the marital value of Husband's interest in USLV. The Master properly assessed the credibility of Husband's expert witness, Mr. LeMaster, and credited his testimony that the sale of USLV allowed the four shareholders, including Husband, to satisfy more than three million dollars in outstanding corporate debt, wind down the business, and begin instead working as employees of St. Luke's. *See* Master's Report at 13. The Master reasonably found that the value of Husband's interest in USLV was, at the time of the hearings, zero dollars. Because the stipulated value at the time of the parties' marriage was $52,695, and because the Master is directed by law to the use the lesser of the value at the time of separation or the value at the time of the hearing, *see* 23 Pa.C.S.A. § 3501(a.1), the Master properly found a decrease in value of $52,695 to serve as an offset against the gains of other pre-marital assets. Therefore, Plaintiff's Exception No. 5 is denied.

13

## Plaintiff's Exception No. 6: Testimony of Mr. LeMaster

Plaintiff objects to the Master's acceptance of the testimony of Mr. LeMaster, who, as noted, testified for Husband and was the corporate accountant for USLV since 1998. Plaintiff asserts that his testimony was contradictory because he testified that typically the repurchase price for shares of a departing USLV member was computed pursuant to a formula in the Shareholders' Agreement, which had typically resulted in shareholders receiving over $200,000. However, that formula was revised at a shareholders' meeting in 2016 to be a flat $50,000. Plaintiff states that Mr. LeMaster failed to reveal that the shares of one doctor, Dr. Chiapella, were repurchased for $218,049.00 in July 2016. Plaintiff states that this sheds significant doubt on the value of shares of USLV. Plaintiff contends that, because a Master's conclusions regarding credibility are not binding on the reviewing court, *see* <u>Rothrock v. Rothrock</u>, 765 A.2d 400, 404 (Pa. Super. 2000), this Court should determine that the Master erred in viewing Mr. LeMaster's testimony as believable and reliable.

Defendant responds that there is no contradiction or other reason to disbelieve Mr. LeMaster's testimony. He testified that two retiring partners were paid $50,000 for their shares under the new agreement while Dr. Chiapella's termination preceded the change in formula and that is why her shares were valued under the previous agreement. Additionally, Wife's expert, Dale Capone, was

privy to all documentation that Mr. LeMaster relied upon for his testimony. At the hearing, Wife did not produce Mr. Capone and no contrary report was ever prepared contesting the valuations calculated by Mr. LeMaster. *See* N.T. 1/23/20 at 15-18. Because Mr. LeMaster's testimony was credible and uncontroverted, Defendant urges the Court to reject Plaintiff's exception to the Master's Report.

Upon review, we find no error of law or abuse of discretion in the Master's handling of Mr. LeMaster's testimony. Although we are not bound to accept the Master's determinations with regard to the credibility of witnesses, *see* Arcure v. Arcure, supra at 695, upon a review of the relevant testimony, and giving the Master's evaluation as set forth in his Report the "fullest consideration," we see no reason to alter his determination on this point. Accordingly, Plaintiff's Exception No. 6 is denied.

### Plaintiff's Exception No. 7: Qualified Retirement Assets

Plaintiff's seventh and final exception is that the Master erred by awarding Wife only qualified retirement assets, thus leaving Husband with all of the cash assets. Plaintiff argues that the Master erred in his statement that "there will be little tax implications to either party as no assets will need to be liquidated." *See* Plaintiff's Brief at 8, quoting Master's Report at 20. Plaintiff says that she will eventually have to liquidate the qualified retirement assets and pay the resulting taxes thereon unless she simply holds them intact until her own death. Plaintiff

says that, because the Master failed to articulate a logical basis for attributing all of the cash assets to Husband and all of the qualified retirement assets to Wife, this exception to the Master's Report should be granted.

Defendant responds that he agrees with Plaintiff, in part, but "only to the extent that the Master recommends the transfer of taxable assets that exceeds the martial value of taxable assets subject to Wife's claims. Defendant asserts, therefore, that this recommendation is simply impossible to be met. Defendant's Brief at 6. Defendant seeks an alternative to allow for distribution to Wife from other assets.

Although Defendant does not explicitly join Plaintiff's exception, both parties seem to agree that the Master's recommendation that "Husband will transfer to Wife, from his qualified assets, the sum of $821,241.00" is either unfair (because it leaves Husband with all of the cash assets) or unworkable (because Husband's qualified assets are less than $821,241.00). With regard to the full tax implications, the picture is complicated. Under the distribution scheme contained in the Master's Report, in addition to various cash assets, Husband also maintains the Briarwood Home, a Fidelity investment account, and a Vanguard investment account. Although these are not qualified retirement assets subject to early withdrawal penalties, as a practical matter these assets and accounts are similarly

16

subject to future taxation, at least to the extent that any capital gains are realized during the life of the owner.[4]

In light of the parties' common position that the Master's recommendation cannot be carried out in its present form, and in the interest of achieving economic justice, we grant Plaintiff's Exception No. 7. The funds to be transferred to Wife should come from a combination of qualified and non-qualified assets consistent with the totality of the marital estate.

### Defendant's Exceptions Nos. 1 and 2:
### Statement of Total Value of Marital Estate with Percentages to Each of the Parties and Recommendation of Set Amount to be Paid to Wife

Defendant argues that the Master erred in his valuation of the marital estate because he failed to specify percentages of distribution and instead only set forth a specific monetary amount to be paid from Husband to Wife. Defendant believes the Report intended to recommend that the parties each receive an equal share of the marital estate. However, the Report does not provide any specific percentages to be distributed to each of the parties, lists "qualified" and "non-qualified" assets together, and recommends only that Husband distribute a specific dollar amount to Wife from his "qualified" assets. Defendant contends that this error is of particular impact here, where a large portion of the assets at issue are invested in the stock

---

[4] The Court recognizes the possibility that a significant portion of any profits realized from a future sale of the Briarwood Home may be exempt from capital gains taxes, although we reach no such conclusion based solely upon the facts of record.

17

market and subject to significant fluctuations until the date of actual distribution. Husband notes that the "qualified assets" in the marital estate are insufficient to distribute the amount of $821,241 from such assets to Wife as recommended by the Master, and the Report does not set forth how such a distribution can be accomplished.

Plaintiff responds that these exceptions place form over function, and that all values and determinations by the Master were itemized and are able to be extracted from the text of the Report, as summarized by Plaintiff's itemization. *See* Plaintiff's Brief in Response to Defendant's Exceptions, Exhibit A. Therefore, Plaintiff disagrees that the Master erred with regard to naming the specific assets and their values. Although Plaintiff states that she cannot agree to Defendant's exceptions, Plaintiff does agree that the award should have been broken down into non-qualified and qualified assets, and asserts that Wife should have received fifty percent (50%) of the cash assets as well as fifty percent (50%) of the qualified assets. In accordance with our ruling on Plaintiff's Exception No. 7, we will grant Defendant's Exceptions Nos. 1 and 2 to the extent that they seek a distribution to Wife that is not entirely from qualified assets but rather consists of both qualified and non-qualified assets consistent with the totality of the marital estate.

Defendant's Exceptions Nos. 1 and 2 are further granted to the extent they seek the distribution of assets to be expressed as a percentage rather than a specific

dollar amount. By statute, it is the court's duty to "equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such *percentages* and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different *percentage* to each marital asset or group of assets" 23 Pa.C.S.A. § 3502(a) (emphasis added). "In an order made under this chapter for the distribution of property, the court shall set forth the *percentage* of distribution for each marital asset or group of assets and the reason for the distribution ordered." 23 Pa.C.S.A. § 3506 (emphasis added). Although Plaintiff is not necessarily incorrect that a percentage and a specific dollar figure can simply be two different methods of expressing the same idea, the court is directed by statute to apply a percentage. We therefore find that the Master's expression of his determination in terms of dollars only, rather than as a percentage, was in error.

### Defendant's Exceptions Nos. 3 and 4:
### Denial of Motion in Limine to Exclude Testimony of Wife's Expert, Jonathan Cramer and Acceptance of Mr. Cramer's Testimony[5]

Defendant argues that the Master erred in denying his motion in limine to exclude the testimony of Wife's expert, Jonathan Cramer, as irrelevant and

---

[5] Defendant's Exceptions erroneously refer to Wife's expert as "Jonathan Clark", but this is corrected to "Jonathan Cramer" in Defendant's supporting brief.

contrary to existing law. Defendant's counsel had argued that, under 23 Pa.C.S.A. § 3501(a.1), that no additional growth should be added to Husband's non-marital assets following the date of separation. The Master denied the motion and permitted testimony from Mr. Cramer regarding a growth factor to be applied to the "marital portion" of the non-marital assets. Defendant contends that Mr. Cramer's testimony should not have been permitted and that the Master erred by accepting his testimony as to additional amounts he added to the non-marital property of Husband after the date of separation. Therefore, the additional increase of approximately $62,000 in the "marital portion" of Husband's non-marital assets was in error.

Plaintiff responds that the Master's report was based upon the uncontroverted expert testimony of Mr. Cramer, and so no error can exist. *See* Bold v. Bold, 516 A.2d 741, 744 (Pa. Super. 1986). Plaintiff also argues that Defendant is incorrect that growth should not apply to non-marital assets. Plaintiff reiterates that, as here, where the marital portion of non-marital assets can be identified, the value of that portion should be determined at the date closest to distribution.

The Master's Report begins with the Master's ruling on Defendant's Motion in Limine, which was held in abeyance during the hearing, see N.T. 1/22/20 at 171, to allow for Mr. Cramer to testify without an on-the-spot ruling by the Master as to

the admissibility of that testimony. The Master found that Husband had not cited any rule of evidence or relevant case law that would justify the exclusion of Mr. Cramer's testimony, but rather advanced only arguments supporting his disagreement with Mr. Cramer's conclusions. *See* Master's Report at 2. We agree with Plaintiff that the Master did not commit an error of law or abuse his discretion in determining that Mr. Cramer could testify. Defendant's Exception No. 3 is, therefore, denied.

We turn now to the substance of Mr. Cramer's testimony and the Master's acceptance of that testimony. Mr. Cramer gave testimony regarding Husband's USLV Profit Sharing Plan and Guardian Whole Life Insurance Policy. Both of these assets were pre-marital assets that saw a substantial increase in value both during the marriage and after separation. The Master found that these assets have several components: (1) their pre-marital value; (2) the growth of the pre-marital component between the date of marriage and date of separation; (3) contributions made during the marriage; (4) the growth of these marital contributions; (5) contributions made after the date of separation; and (6) growth on contributions made after the date of separation. *See* Master's Report at 15-16. The Report concludes that components (2), (3), and (4) are marital and subject to equitable distribution, while components (1), (5), and (6) are non-marital. Mr. Cramer

21

provided calculations of these components, while Husband did not offer expert testimony on this point. *See* id. at 16-17.

Upon a review of the testimony and the Report, we find that the Master appropriately relied upon uncontroverted testimony of an expert witness with regard to valuation and did not commit an error of law by considering the growth of the marital portion of an asset that has both marital and non-marital components. The Master identified the marital portion of the asset and the increase in value of the non-marital portion that must be considered "marital property" pursuant to 23 Pa.C.S.A. § 3501.[6] Accordingly, Defendant's Exception No. 4 is denied.

---

[6] Section 3501 provides, in relevant part:

> **(a) General rule.**--As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1). However, marital property does not include:
> (1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.
> (2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.
> (3) Property acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property.
> (4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets.
> (5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the date of final separation.
> (6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958 (Public Law 85-857, 72 Stat. 1229), as amended, except for those benefits received by a veteran where the veteran has waived a portion of his military retirement pay in order to receive veterans' compensation.
> (7) Property to the extent to which the property has been mortgaged or otherwise encumbered in good faith for value prior to the date of final separation.
> (8) Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received. **Footnote is continued on page 23**

22

## Defendant's Exception No. 5:
## Failure to Consider Total Loss of Pre-Marital Assets

Defendant argues, similarly to his response to Plaintiff's Exception #5, that

Husband's loss upon the sale of USLV was not the accepted figure of $52,695, but

actually a much higher amount because the business's debt exceeded the sale price.

Because the value of Husband's interest was reduced from $236,734 on the date of

separation to less than zero, he contends his actual loss was $352,334. Therefore,

he argues that the growth of Husband's non-marital assets should be offset by the

total loss of Husband's non-marital assets in the amount of $352,334 in order to

effect economic justice between the parties.

Plaintiff responds that her argument as to her own Exception #5 applies here.

Plaintiff notes that the maximum credit available to Defendant is the complete loss

of the premarital value of his interest in USLV, and that it misstates Defendant's

actual loss to also include a gain that occurred during the marriage and then lost.

As set forth in the discussion of Plaintiff's Exception No. 5 supra, the Master did

---

**Footnote continued from page 22**

(a.1) **Measuring and determining the increase in value of nonmarital property.**--The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the nonmarital property of a party shall be offset against any increase in value of the nonmarital property of that party. However, a decrease in value of the nonmarital property of a party shall not be offset against any increase in value of the nonmarital property of the other party or against any other marital property subject to equitable division.

...

23 Pa.C.S.A. § 3501.

23

not commit an error of law or abuse of discretion by finding that Husband sustained a loss of $52,695 with regard to his ownership interest in UNLV. The Master's Report directly addresses Defendant's argument that his loss should be much higher, more than $300,000, by noting that no such loss was proven at the hearing. *See* Master's Report at 15, n. 7. We agree that the record does not support a decrease in value in excess of $52,695. Accordingly Defendant's Exception No. 5 is denied.

### Defendant's Exception No. 6:
### Failure to Consider Wife's Lack of Contribution to the Marital Estate

Defendant argues that the Master, by seemingly recommending a near-equal division of what he determined to be the marital estate, failed to consider Wife's lack of contribution to the marital estate. Defendant contends that Wife admitted that she never contributed to any of the marital assets during the marriage, *see* N.T. 1/22/20 at 142, and spent her money solely on what she wanted "to enjoy life," not contributing toward mortgage payments, taxes, utilities, dinners, vacations, or other items or services for their mutual enjoyment despite her earning more than him at times during their marriage. Despite earning over $300,000, Wife has no separate assets and no growth in her non-marital assets.

Plaintiff responds that Defendant cannot now attempt to reconstruct the lifestyle and contributions of the parties during the course of their marriage. In this matter, the Master equally attributed the lifestyle choices of the parties during the

24

marriage based upon evidence that the parties jointly made decisions regarding investments and payments of certain funds, *see* N.T. 1/22/20 at 29, and at no point prior to their separation did either party object to those decisions.

Defendant is correct that equitable distribution does require the consideration of "[t]he contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property…". 23 Pa.C.S.A. § 3502(a)(7). However, we disagree with Defendant's assertion that the Master did not consider this factor. The Report mentions that during the marriage Wife spent "lavishly on luxury items," failing to amass "the expected level of savings, assets, or retirement plans," while Husband lived more frugally. *See* Master's Report at 5-6. However, the Master specifically rejected Husband's argument that Wife dissipated marital assets through this behavior. *See* id. at 6. The Master's Report later cites Section 3502(a)(7), *see* id. at 18, and notes that the weight afforded to this factor, as well as the other factors enumerated in Section 3502(a), is within the sound discretion of the trial court. Id. at 18-19 (citing Wayda v. Wayda, 576 A.2d 1060, 1063 (Pa. Super. 1990)). The Master clearly considered this issue in determining an equitable distribution of assets, and thus did not commit legal error or abuse his discretion. Accordingly Defendant's Exception No. 6 is denied.

25

## Defendant's Exceptions Nos. 7 and 8:
## Documentation Showing Value of Husband's Assets Prior to Covid-19 Crisis & Decreased Value of Husband's Assets Since Master's Hearings

Defendant again reiterates that the Master failed to apply and use a percentage distribution and, as a result, Husband was unfairly disadvantaged when the "value of the stock market dropped significantly" due to the Covid-19 pandemic. Had the recommended distribution to Wife been a percentage rather than a specific amount, Defendant asserts that both parties would have shared the risk of declining values. Defendant states that economic justice has not been effectuated by the Master's recommendation of a specific dollar amount rather than a percentage under which both parties would share the risk of market fluctuations.

Plaintiff responds that Defendant has failed to provide any evidentiary support for his assertion that there has been a drop in the value of the affected assets. Although Plaintiff concedes that factoring in a market effect on qualified assets may be generally reasonable, it is well-established that "[a] Trial Court may not consider evidence outside the record in making its determination." Ney v. Ney, 917 A.2d. 863, 866 (Pa. Super. 2007) (citing Eck v. Eck, 475 A.2d 825, 827 (Pa. Super. 1994)).

With regard to the valuation of the marital assets, we agree that there is no evidence of record to demonstrate that the invested funds at issue have significantly dropped in value. However, as set forth herein with regard to

Defendant's Exceptions Nos. 1 and 2, we agree that the distribution should have been expressed in terms of percentages rather than as a set dollar amount to be transferred from Husband to Wife. We therefore deny Defendant's Exceptions Nos. 7 and 8 to the extent they ask the court to consider evidence outside of the record with regard to post-hearing fluctuations in the value of certain assets. We grant Defendant's Exceptions Nos. 7 and 8 to the extent they seek a distribution expressed as a percentage of marital assets.

## CONCLUSION

The Master identified twenty-one (21) assets that comprised the marital estate and, therefore, are subject to equitable distribution. These assets are set forth in numbered paragraphs 1 – 21 on pages 9 – 11 of the Master's Report. Paragraphs 1 – 14 are assets attributed to Husband/Defendant. Paragraphs 15 – 21 are assets attributed to Wife/Plaintiff. We have summarized the Master's findings in Court Exhibit "A" attached to this Opinion and made a part hereof. Husband's total is the sum of $1,866.391. However, the Master afforded an offset to Husband in the amount of $52,695 for the decrease in value of Husband's ownership interest in USLV. We have upheld that determination in our analysis of Plaintiff's Exception No. 5 and Defendant's Exception No. 5. With the aforesaid offset, assets Husband's assets equal $1,813,696.

Assets attributable to Wife equal $118,372. The combination of assets attributed to Husband and assets attributed to Wife brings the total value of the marital estate to $1,932,068. Taking into consideration the value of the assets each party had retained, and in order to effectuate economic justice between the parties, the Master recommended that Husband be ordered to transfer to Wife the sum of $845,241. Without so stating, this represented approximately 50% of the total marital estate. The Master then reduced the recommended amount by $24,000 based upon an agreement of the parties that Wife owes Husband this amount. *See* Master's Report at 20. This resulted in the Master finally recommending that Husband transfer $821,241 to Wife in order to effectuate the equitable distribution.

However, as a result of our rulings on the exceptions filed by the parties, we must now adjust some of the findings of the Master as follows:

- Increased value of Briarwood Home is changed from $10,000 to $186,500 (See Plaintiff's Exception No. 2 supra)

- Increased value of USLV is changed from $482,178 to $493,265. (See Plaintiff's Exception No. 3 supra)

- National Penn Bank Account No.: 3952 is added as a marital asset attributed to Husband in amount of $2,018.00. (See Plaintiff's Exception No. 4 supra.)

Taking into consideration the aforesaid adjustments, the marital estate is increased by the sum of $189,605. These additional assets are all attributed to Husband bringing his total to $2,003,301. Therefore, we have revised the calculation of the marital estate as set forth in Court Exhibit "B" attached to this

28

Opinion and made a part hereof. This brings the total value of marital property subject to equitable distribution to the sum of $2,121,673.

We believe that the Master was correct in recommending essentially a 50% - 50% division of the marital estate. Based upon the aforesaid law and facts of record, we find that the Court's revision of some of the values of certain assets should not change that percentage of distribution. Therefore, taking into consideration the revised values and the value of the assets each party has retained, we find that Husband should remit $942,464 to Wife, which will effectuate a 50% - 50% distribution of marital assets. This amount, however, will be reduced by $24,000.00 which represents the amount of money the parties acknowledged is owed by Wife to Husband. Therefore, Husband will be ordered to transfer to Wife $918,464.00. The Court's calculation of the equitable distribution is set forth in Court Exhibit "C" which is attached to this Opinion and made a part hereof.

Accordingly, we enter the Order that is attached to this Opinion.

# SUMMARY OF MASTER'S DETERMINATION OF MARITAL ESTATE

## HUSBAND

| | |
|---|---|
| Increase value of "Briarwood Home" | $ 10,000 |
| Increase value pre-marital USLV | $ 482,178 |
| Increase value pre-marital Fidelity Inv. | $ 361,597 |
| Increase value pre-marital Fidelity IRA | $ 27,256 |
| Vanguard Account | $ 447,370 |
| Increase value pre-marital Guardian Life Ins | $ 291,755 |
| Pre-marital Knights of Columbus Life Ins. | $ 6,463 |
| Pre-marital American Funds Act. | $ 2,285 |
| Ownership interest in USLV | $ -0- |
| USLV real estate, MCC real estate | $ 161,734 |
| Inc. value-pre-marital Int. Keystone Partners | $ 21,880 |
| Inc. value-pre-mar Int. Theralogix Urology | $ 3,213 |
| GMC Denali | $ 37,650 |
| National Penn account | $ 13,010 |
| | **$1,866,391** |

Less: $52,695.00
Decrease in value of USLV

**Total Husband**      **$1,813,696**

## WIFE

| | |
|---|---|
| Inc. value pre-marital Fidelity IRA | $ 8,495 |
| Fidelity SEP/IRA-Separation Balance | $ 65,817 |
| National Penn Checking Account (1727) | $ 1,341 |
| National Penn Checking Account (8032) | $ 19,997 |
| National Penn Checking Act. Dt of Sep. | $ 9,924 |
| KNBT Savings Account | $ 5,498 |
| Automobile | $ 7,300 |
| **Total Wife** | **$118,372** |

---

**TOTAL Marital Assets - $1,932,068
Determined by Master**

**Court Exhibit "A"**

# COURT REVISED SUMMARY OF MARITAL ESTATE

| HUSBAND | | WIFE | |
|---|---|---|---|
| Increase value of "Briarwood Home" | $ 186,500 | Inc. value pre-marital Fidelity IRA | $ 8,495 |
| Increase value pre-marital USLV | $ 493,265 | Fidelity SEP/IRA-Separation Balance | $ 65,817 |
| Increase value pre-marital Fidelity Inv. | $ 361,597 | National Penn Checking Account (1727) | $ 1,341 |
| Increase value pre-marital Fidelity IRA | $ 27,256 | National Penn Checking Account (8032) | $ 19,997 |
| Vanguard Account | $ 447,370 | National Penn Checking Act. Dt of Sep. | $ 9,924 |
| Increase value pre-marital Guardian Life Ins | $ 291,755 | KNBT Savings Account | $ 5,498 |
| Pre-marital Knights of Columbus Life Ins. | $ 6,463 | Automobile | $ 7,300 |
| Pre-marital American Funds Act. | $ 2,285 | **Total Wife** | **$118,372** |
| Ownership interest in USLV | $ -0- | | |
| USLV real estate, MCC real estate | $ 161,734 | | |
| Inc. value-pre-marital Int. Keystone Partners | $ 21,880 | | |
| Inc. value-pre-mar Int. Theralogix Urology | $ 3,213 | | |
| GMC Denali | $ 37,650 | | |
| National Penn account | $ 13,010 | | |
| National Penn Act. No. 3952 | $ 2,018 | | |
| | **$2,055,996** | | |

Less: $52,695.00
Decrease in value of USLV

**Total Husband**      **$2,003,301**

---

**TOTAL Marital Assets - $2,121,673**
**Determined by Court**

**Court Exhibit "B"**

# COURT CALCULATION OF EQUITABLE DISTRIBUTION

**I.**  **Assets**

Husband    $2,003,301
Wife       118,372
Total      $2,121,673

**II.**  **50% Distribution**
Total Marital Estate:        $2,121,673

$2,121,673 ÷ 2 =       $1,060,836 to each party

**III.**  **Calculation of Wife's Share**

$1,060,836
Less:   - 118,372 - Retained Property of Wife
$ 942,464
Less:   - 24,000 - Amount owed to Husband

$ 918,464 - Payable to Wife

**Court Exhibit "C"**

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| HEATHER L. TRAPASSO, | Docket Nos.: **C-48-CV-2013-3559** |
| | **DR-95317** |
| Plaintiff, | PASCES No.: 031116658 |
| v. | |
| JOSEPH G. TRAPASSO, | |
| Defendant. | |

**FILED**
COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA
2021 MAR 31 P 3: 14

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

AND NOW, this 31ˢᵀ day of March, 2021, the Court issues the following statement pursuant to Pa.R.A.P. No. 1925(a).

This matter is before the Superior Court on Defendant's appeal of an Order entered on January 4, 2021 in the parties' divorce action at Northampton County docket no. C-48-CV-2013-3559. On the Notice of Appeal and subsequently filed Rule 1925(b) Statement, Defendant indicates that he is also appealing the Orders granting Plaintiff Alimony Pendente Lite ("APL") entered in the Domestic Relations Section during the course of the divorce litigation.

With regard to Defendant's appeal of the January 4, 2021 Order, the reasons for the Court's decision are set forth fully in the January 4, 2021 Opinion of the Court, which was filed concurrently with the Order, as well

1

99

as the Master's Report filed March 20, 2020.[1] Because the reasons for the January 4, 2021 Order are set forth at length in the Opinion and Master's Report, we rely on those documents of record and do not duplicate here their discussions of the factual/procedural background and the reasons for the Court's determinations.

With regard to Defendant's appeal of the APL Orders at issue, the procedural history of the APL in the Domestic Relations Section and the propriety of those Orders are addressed herein.

## PROCEDURAL BACKGROUND

On July 5, 2017, Plaintiff, Heather Trapasso, filed a Complaint to establish APL with the Northampton County Domestic Relations Section. *See* Complaint, Trapasso v. Trapasso, DR-095317 (C.P. Northampton 7/5/2017).[2] At the Court's direction, the parties appeared with counsel for a support conference on September 26, 2017. *See* Conference Notes, Trapasso, supra. (C.P. Northampton 9/26/2017). The parties' 2016 income tax returns were received, however, at the conclusion of the conference, it was noted that disposition of the case was pending receipt of Defendant's

---

[1] Paragraph 14 of the January 4, 2021 Order states that, "[e]xcept as modified herein, in all other respects, the Master's Report is accepted and approved by the Court, and made a part hereof."

[2] Plaintiff, Heather Trapasso, filed a Complaint in Divorce at Northampton County Civil Docket No. C-48-CV-2013-03559. The Complaint to establish APL in the instant matter was a copy of the Complaint in Divorce certified to the Domestic Relations Section on July 5, 2017.

pay stubs and a tax return for Defendant's business. *See* Conference Notes, Trapasso, supra. (C.P. Northampton 9/26/ 2017).

On or about October 23, 2017, Defendant submitted to the Honorable Paula A. Roscioli a "Petition to Dismiss Plaintiff's Claim for Alimony Pendente Lite." *See* Defendant's Petition to Dismiss Plaintiff's Claim for Alimony Pendente Lite, Trapasso, supra. (C.P. Northampton 11/16/2017)[3]. Also on October 23, 2017, Judge Roscioli ordered that Defendant's Petition to Dismiss Plaintiff's Claim for Alimony Pendente Lite would be heard on the De Novo Hearing List scheduled for November 6, 2017 before the Honorable Michael J. Koury, Jr. *See* Order of Court, Trapasso, supra. (C.P. Northampton 10/23/2017).

Following receipt of the documentation required at the conclusion of the September 26, 2017 conference, Defendant was found to have a monthly disposable net income in 2016 in the amount of $19,702.75, while Plaintiff's monthly disposable net income was determined to be $13,398.77. *See* Conference Notes, Trapasso, supra. (C.P. Northampton 10/25/2017). On October 25, 2017, the Honorable Paula A. Roscioli entered an Order of Court, utilizing the parties' monthly disposable net incomes as determined by the Conference Officer and the formula provided by the Pennsylvania

_____

[3] The Petition was received on 10/24/2017 but filed and docketed on November 16. 2012.

Rules of Civil Procedure, requiring Defendant to pay APL in the amount of $2,774.00 per month, effective July 5, 2017. The award was allocated $2,522.00 for current support of Plaintiff and $252.00 for arrears. *See* Order of Court, <u>Trapasso</u>, <u>supra</u>. (C.P. Northampton 10/25/2017) ("October 2017 Order"). Arrears as of October 25, 2017 were set at $9,804.71. <u>Id.</u> Defendant was required to provide medical insurance coverage for Plaintiff. <u>Id.</u> Pursuant to the October 2017 Order, APL was set to terminate on July 4, 2019 absent a written request from Plaintiff indicating the need for continued support. <u>Id.</u> The October 2017 Order also provided that APL could terminate earlier than July 4, 2019 if the parties reached a settlement, or if ordered by the Court. <u>Id.</u>

On November 6, 2017, the parties appeared before Judge Koury for the scheduled hearing on Defendant's Petition to Dismiss Plaintiff's Request for APL. On November 16, 2017, Judge Koury entered an Order of Court denying Defendant's request to dismiss Plaintiff's claim for APL. *See* Order of Court, <u>Trapasso</u>, <u>supra</u>. (C.P. Northampton 11/17/2017). The Order directed the parties to comply with the October 25, 2017 Order. <u>Id.</u>

On December 6, 2017, Defendant filed a Notice of Appeal of the November 16, 2017 Order to the Superior Court. *See* Notice of Appeal, <u>Trapasso</u>, <u>supra</u>. (C.P. Northampton 12/6/2017). Defendant failed to request

4

a transcript of the November 6, 2017 hearing and failed to submit a Statement of Errors Complained of on Appeal. On December 16, 2018, the Court received a Notice of Discontinuance of Appeal by Defendant.

On June 5, 2019, Plaintiff filed a written request for continued APL and demand for a de novo hearing regarding the continuation of the APL in this matter. On June 6, 2019, Defendant filed a written demand for de novo hearing regarding opposition to continued APL. The parties were ordered to appear at a complex/separate listing hearing to occur on July 22, 2019, which was subsequently continued to August 12, 2019.

On August 12, 2019, the parties appeared before the Honorable Samuel P. Murray for the hearing on Plaintiff's request for continued alimony pendente lite and Defendant's opposition thereto. Following the hearing, Judge Murray entered an Order directing counsel for Plaintiff to submit a letter brief within 30 days and indicating that after receipt of the that documentation, further disposition would be made by the Court. *See* Order of Court, Trapasso, supra. (C.P. Northampton 8/23/2019). Counsel for Plaintiff timely submitted his brief on September 3, 2019. Counsel for Defendant submitted a brief on September 26, 2019.

On October 9, 2019, Judge Murray entered an Order granting Plaintiff's request for continued APL and extended Defendant's APL

5

obligation for an additional six (6) months effective July 5, 2019. *See* Order of Court, <u>Trapasso</u>, <u>supra</u>. (C.P. Northampton 10/11/2019). APL was set to terminate on January 4, 2020 absent a written request from Plaintiff indicating the need for continued support. <u>Id.</u> All other contingencies of the October 25, 2017 Order remained in full force and effect. <u>Id.</u>

On January 6, 2020, Judge Roscioli entered an Order directing Defendant to pay $2,774.00 per month for arrears, effective January 4, 2020. *See* Order of Court, <u>Trapasso</u>, <u>supra</u>. (C.P. Northampton 1/6/2020). No insurance was ordered. <u>Id.</u> The Order terminated APL as of January 4, 2020 in accordance with Judge Murray's October 9, 2019 Order. <u>Id.</u> Upon payment of the arrears in full, the case was to be closed. <u>Id.</u> On February 28, 2020, Judge Roscioli entered an Order of Court closing the case and vacating the attachment of Defendant's income as the record indicated that the arrears had been paid in full.

On February 3, 2021, Defendant, Joseph Trapasso, filed a Notice of Appeal in the divorce case, Northampton County docket no. C-48-CV-2013-3359, of an Order entered by the undersigned on January 4, 2021 granting in part and denying in part exceptions filed to the Master's Report by both parties. In the Notice of Appeal, Defendant indicated that he was also appealing "previous interlocutory Orders granting Alimony Pendente Lite,

as entered on the docket". *See* Notice of Appeal, <u>Trapasso v. Trapasso</u>, CV-2013-3359 (C.P. Northampton 2/3/2021). On March 3, 2021, Defendant filed his Rule 1925(b) Statement of Errors Complained of on Appeal in the divorce matter. Paragraph three (3) of the Statement of Errors set forth the following averment: "Did the lower court err in granting and continuing Plaintiff's alimony pendente lite where she showed no need and had substantial income, sometimes greater than Defendant during the marriage?" *See* Defendant's Rule 1925(b) Statement, <u>Trapasso v. Trapasso</u>, CV-2013-3359 (C.P. Northampton 3/3/2021).

## STANDARD OF REVIEW

It is well established that "[i]t is within the discretion of the lower court to determine the amount of a support Order." <u>Hartley v. Hartley</u>, 528 A.2d 233, 235 (Pa. Super. 1987) (citing <u>Costello v. LeNoir</u>, 337 A.2d 866 (Pa. 1975)). It is further well established that on appeal the Superior Court will "review APL awards under an abuse of discretion standard." <u>Childress v. Bogosian</u>, 12 A.3d 448, 463 (Pa. Super. 2011) (citing <u>Haentjens v. Haentjens</u>, 860 A.2d 1056 (Pa. Super. 2004)). The Superior Court has stated that the "standard of review for awards of alimony *pendente lite* is well settled. If an order for alimony *pendente lite* is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the

trial court." Isralsky v. Isralsky, 824 A.2d 1178, 1188 (Pa. Super. 2003) (quoting Jayne v. Jayne, 663 A.2d 169, 176 (Pa. Super. 1995)). "In order to overturn the decision of the trial court, we must find that it 'committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record.'" Dudas v. Pietrzykowski, 849 A.2d 582, 585 (Pa. 2004).

The Pennsylvania Supreme Court has stated as follows:

> "Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; and improvident exercise of discretion; and error of law.

Commonwealth v. Powell, 590 A.2d 1240, 1244 (Pa. 1991). A finding of abuse of discretion will be made only upon a showing of clear and convincing evidence. Id.

8

# DISCUSSION

It is respectfully submitted that Defendant's appeal of the APL Orders entered during the course of the divorce proceedings is without merit and should be dismissed. It was not an error of law or an abuse of discretion to grant Plaintiff APL during the pendency of the divorce proceedings, or to continue APL until the conclusion of the divorce litigation.

23 Pa.C.S.A. § 4322(a) provides that "[c]hild and spousal support *shall be awarded* pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. (emphasis added). That section further notes as follows:

> [t]he guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, *the guideline shall place primary emphasis on the net incomes and earning capacities of the parties*, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

23 Pa.C.S.A. § 4322(a) (emphasis added). Pa.R.C.P. No. 1910.16-1 provides that "[e]xcept as provided in subdivision (3), the support guidelines determine the amount of support that a spouse or parent should pay based on the parties' combined monthly net income, as defined in Pa.R.C.P. No.

9

1910.16-2, and the number of persons being supported."[4] Pa.R.C.P. No. 1910.16-1(a). Rule 1910.16-1 further provides that "[t]he support amount (child support, spousal support or alimony *pendente lite)* awarded pursuant to the Pa.R.C.P. Nos. 1910.11 and 1910.12 procedures <u>must be determined in accordance with the support guidelines</u>, which consist of the guidelines expressed as the child support schedule in Pa.R.C.P. No. 1910.16-3, the Pa.R.C.P. No. 1910.16-4 formulas, and the operation of the guidelines as set forth in these rules." Pa.R.C.P. No. 1910-16.1(b) (emphasis added). The Rules also specifically note that "[i[f the trier-of-fact determines that a party has a duty to pay support, there is a rebuttable presumption that the guideline-calculated support amount is the correct support amount." Pa.R.C.P. No. 1910.16-1(d).

When the October 25, 2017 APL Order was entered, Pa.R.C.P. No. 1910.16-3.1 provided that "[i]n cases in which the parties' combined monthly net income exceeds $30,000, the trier of fact shall apply the formula in Part IV of Rule 1910.16-4(a) as a preliminary analysis in calculating spousal support or alimony pendente lite." Pennsylvania Rule of Civil Procedure No. 1910.16-4 provides the formulas for calculating support

---

[4] Subdivision 3 addresses circumstances where the plaintiff is a public body and is not applicable to the instant matter.

obligations under various circumstances. Part IV of Rule 1910.16-4, paragraphs 22 through 29 set forth the formula to calculate the APL obligation of a defendant when there are no minor children. That section provides the following formula for calculating APL with no dependent children:

22. Obligor's Monthly Net Income (line 4)
23. Obligor's Support, Alimony *Pendente Lite* or Alimony Obligations to Children or Former Spouses who are not part of this action, if any (Pa.R.C.P. No. 1910.16-2(c)(2))     ( )
24. Obligee's Monthly Net Income (line 4)     ( )
25. Difference (line 22 minus lines 23 and 24)
26. Multiply by 40%     x 40%
27. Preliminary Monthly Spousal Support or APL amount (line 25 multiplied by line 26)     _____
28. Adjustments for Other Expenses (*See* Pa.R.C.P. No. 1910.16-6) (line 12f)     _____
29. Total Monthly Spousal Support or APL amount (line 27 plus or minus line 28, as appropriate)     _____

This was the formula utilized by the Conference Officer to determine the recommended APL obligation for Defendant, and the calculations were provided to the parties. The resulting amount calculated utilizing this formula was set forth in the October 25, 2017 Order.

As set forth above, APL was initially ordered on October 25, 2017. *See* Order of Court, <u>Trapasso v. Trapasso</u>, DR-95317 (C.P. Northampton 10/26/2017). Defendant was ordered to pay APL in the amount of $2,774.00

11

per month effective July 5, 2017, the date on which the Complaint for APL was filed with the Domestic Relations Section. Id. The monthly APL payment was allocated $2,522 for basic support and $252.00 on arrears. Id. APL was set to terminate on July 4, 2019 absent a written request for continued support from Plaintiff. Id. Arrears as of October 25, 2017 were set at $9,804.71. Id.

The October 25, 2017 Order was entered following a conference on September 26, 2017. At the conference, both parties appeared with counsel and provided information and documentation of income. *See* Conference Notes, Trapasso, DR-95317 (C.P. Northampton 9/26/2017). Defendant reported being a partner in a Urology medical practice that had recently been sold to St. Luke's Physician's Group. Id. Defendant reported that he had recently begun receiving a salary of approximately $400,000.00 per year, along with potential additional incentives. Id. Defendant was directed to submit his full 2016 Federal Tax Return and business returns within seven (7) days of the conference. Id. Plaintiff submitted her 2016 Federal Tax Return at the time of the conference. Id. Plaintiff's 2016 return indicated gross receipts of $283,360.00. Id. Following review of the parties' tax returns, Defendant was found to have a monthly disposable net income in 2016 of $19,702.75. *See* Conference Follow-Up Notes, Trapasso, DR-

12

95317 (C.P. Northampton 10/25/2017). Plaintiff was determined to have a monthly disposable net income in 2016 of $13,398.77. Id. The Domestic Relations Conference Officer then properly utilized the formula set forth in Pa.R.C.P. 1910.16-4 to calculate Defendant's APL obligation at $2,521.59 and this amount was properly included in the October 25, 2017 Order. These calculations were provided to the parties and their counsel.

Based on the above, it was clearly not an error of law or an abuse of discretion to enter the October 25, 2017 APL Order. The correct figures were utilized for the parties' incomes, and the calculations were run properly. The Defendant's APL obligation was determined utilizing the statutory scheme and formula, as required by the Pennsylvania Rules of Civil Procedure and applicable statutes.

Defendant's request to dismiss Plaintiff's claim for APL was heard before Judge Koury on November 6, 2017. Defendant has not requested and has not filed with the Court a transcript of that hearing. However, on November 16, 2017, Judge Koury entered an Order denying Defendant's request to dismiss Plaintiff's claim for APL and requiring compliance with the October 25, 2017 Order. *See* Order of Court, Trapasso, DR-95317 (C.P. Northampton 11/17/2017). Given that Defendant's APL obligation was properly calculated, it was not an error of law or an abuse of discretion to

13

deny Defendant's request to dismiss Plaintiff's claim for APL and to require compliance with the October 25, 2017 APL Order.[5]

On June 5, 2019, counsel for Plaintiff filed a demand for a hearing to continue APL. On June 6, 2019, counsel for Defendant filed a written demand for a hearing regarding opposition to the continuation of APL. A hearing occurred on August 12, 2019 before Judge Murray on the issue of continued APL. Defendant has not requested or submitted to the Court a transcript of that hearing. Following the hearing, counsel for Plaintiff was directed to submit a letter brief in support of Plaintiff's request for continued APL. Counsel for both parties submitted legal briefs, and after considering the arguments set forth therein, Judge Murray entered an Order granting the request for continued APL and extending APL six (6) months, to terminate on January 4, 2020, absent another request from Plaintiff indicating the need for continued support. *See* Order of Court, Trapasso, DR-95317 (C.P. Northampton 10/11/2019).

It is well established that "APL is 'an order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding'". Schenk v. Schenk, 880 A.2d 633, 644 (Pa. Super. 2005)

---

[5] As reflected in the DRS docket, Defendant filed an appeal of the November 16, 2017 Order. Defendant did not file a Statement of Errors complained of on Appeal, did not request or submit a transcript, and subsequently discontinued the appeal.

(quoting 23 Pa.C.S.A. § 3103). APL "is designed to help the dependent spouse maintain the standard of living enjoyed while living with the independent spouse." Id. (quoting *Litmans v. Litmans,* 673 A.2d 382, 389 (Pa. Super. 1996)). Furthermore, "APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." Id. APL, therefore, is not dependent on the status of the party, but on the state of the litigation. Id.

As set forth in the October 25, 2017 Order, APL was set to terminate on July 4, 2019, absent written request from Plaintiff indicating the need for continued support. Plaintiff submitted that request and a hearing was held on that request. The record reflects that as of June 5, 2019 when the request for continued APL was filed, as of August 12, 209 when the hearing on the request occurred, and on October 9, 2019 when Judge Murray entered the Order continuing the APL in this matter, the parties' divorce proceedings remained ongoing at Northampton County docket no. C-48-CV-2013-3559. Given that APL is "dependent on the state of the litigation", as stated above, it was not an error of law or an abuse of discretion to continue the APL for an additional 6 months while the divorce litigation continued.

15

## CONCLUSION

For the reasons set forth at length in the Court's January 4, 2021 Opinion and Order, as well as in the Master's Report to the extent it is made a part thereof, it is respectfully submitted that the issues identified in paragraphs 1, 2 and 4 of Defendant's Statement of Errors Complained of on Appeal are without merit. We respectfully request that our decision should be affirmed and Defendant's appeal dismissed.

With regard to paragraph 3 concerning the Court's APL determinations, for the reasons set forth herein we submit that Defendant's APL obligation was properly calculated utilizing the appropriate figures and formulas required by the Rules of Civil Procedure. Defendant did not have a legal basis to dismiss Plaintiff's claim for APL at any point during the litigation. When requested by Plaintiff, Defendant's APL obligation was properly extended for six months while the parties' divorce proceedings continued. Defendant's APL obligation came to an end on January 4, 2020, pursuant to the Court's Order and was not extended beyond that point, despite the fact that the divorce proceedings continued for another year, until the January 4, 2021 Order currently on appeal. The Court did not commit an error of law or an abuse of discretion in awarding Plaintiff APL or extending it an additional 6 months after the initial award was set to expire. Therefore,

16

paragraph 3 of Defendant's Statement of Errors Complained of on Appeal is similarly without merit and we respectfully request that our decision be affirmed and Defendant's appeal dismissed.

BY THE COURT

JOHN M. MORGANELLI, J.

IN THE COURT OF COMMON PLEAS OF
NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

HEATHER L. TRAPASSO,                      :        CIVIL ACTION
                    Plaintiff              :
                                           :        NO. C-0048-CV-2013-3559
        v.                                 :
                                           :
JOSEPH G. TRAPASSO,                        :
                    Defendant              :        IN DIVORCE

### ORDER OF COURT

AND NOW, this __4th__ day of __January__ , __2021__ , upon consideration of the

exceptions to the Master's Report filed by Plaintiff, Heather L. Trapasso, and Defendant, Joseph

G. Trapasso, it is hereby **ORDERED** as follows:

1.   Plaintiff's Exceptions Nos. 1, 5, and 6 are **DENIED.**

2.   Plaintiff's Exceptions Nos. 2, 3, 4, and 7 are **GRANTED.**

3.   Defendant's Exceptions Nos. 1 and 2 are **GRANTED.**

4.   Defendant's Exceptions Nos. 3, 4, 5, and 6 are **DENIED.**

5.   Defendant's Exceptions Nos. 7 and 8 are **GRANTED IN PART** and **DENIED IN**

     **PART** as follows:

     a.   Granted to the extent that they seek distribution as a percentage of marital assets

          rather than a specific dollar amount;

     b.   Denied to the extent that they seek the consideration of evidence outside of the

          record with regard to post-hearing fluctuations in the value of certain assets.

**IT IS FURTHER ORDERED AND DECREED** as follows:



85

6. The parties will be divorced from the bonds of matrimony by a separate order to be entered upon the completion of the equitable distribution scheme set forth within this order.

7. Neither party is entitled alimony or counsel fees.

8. Husband shall transfer to Wife the sum of $918,464.00 in order to effectuate a 50% division of the marital estate. If necessary, the parties will cooperate in the preparation of a qualified domestic relations order and will share the costs associated therewith.

9. Husband shall return to Wife art from the Briarwood Home, one piece located within the foyer and two pieces from the library.

10. The Parties shall execute, within 14 days of presentment, all documents necessary to effectuate the contents of this order.

11. The Parties shall be equally responsible for any outstanding court or stenographer fees associated with this matter.

12. Except as set forth in this Order, neither party is entitled to any further distributions or transfers.

13. The Court retains jurisdiction of any claims raised by the parties to this matter for which a final Order has not yet been entered.

14. Except as modified herein, in all other respects, the Master's Report is accepted and approved by the Court, and made a part hereof.

**BY THE COURT:**

_____
JOHN M. MORGANELLI, J.

2